UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 16-21008-CIV-MORENO**

JEFFREY MELTON, EZEKIEL MORRIS,
TOMMY JOHNSON, JUAN VALDES, and
MANVILLE SMITH,

        Plaintiffs,

vs.

CENTURY ARMS, INC., CENTURY
INTERNATIONAL ARMS CORP.,
CENTURY ARMS OF VERMONT, INC., and
CENTURY INTERNATIONAL ARMS OF
VERMONT, INC.,

        Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This case is a products liability class action brought by owners of various rifles manufactured by Century Arms, Inc., Century International Arms Corporation, Century Arms of Vermont, Inc., and Century International Arms of Vermont, Inc. (collectively, "Century"). Plaintiffs allege that the safety mechanism in certain models is defectively designed and allows the rifles to fire when the safety lever is moved above the safety position. This cause comes before the Court upon Century's Motion to Dismiss, which asks the Court to dismiss all counts for lack of standing or for failure to state a claim upon which relief can be granted. The Court has reviewed the Motion, Plaintiffs' Response and Century's Reply. Additionally, the parties raised some of their briefed arguments at oral argument on March 3, 2017.

## I. BACKGROUND

The five named Plaintiffs own Century AK-47 rifles with full-auto safety selectors manufactured by Century after 1995. Each Plaintiff owns a different model with the same alleged design defect—a full-auto safety selector. Plaintiffs allege that the full-auto safety selector allows the rifles to accidentally fire when the safety lever is moved above the safety position. Plaintiffs also allege that Century had knowledge of the design defect for years and has changed the safety mechanism on its current models, but never warned the public or recalled the allegedly defective rifles. Only one named Plaintiff reports that an accidental discharge has actually occurred—the others claim only to be aware of the risk. None of the named Plaintiffs purchased their rifle directly from Century.

The Complaint alleges ten counts against Century:

1) violation of the Florida Deceptive and Unfair Trade Practices Act;

2) negligence;

3) strict liability in tort;

4) breach of implied warranty of merchantability;

5) violation of the Magnuson-Moss Warranty Act;

6) fraudulent inducement and/or suppression;

7) negligent failure to disclose, failure to warn, concealment and misrepresentation;

8) fraudulent concealment and intentional failure to warn;

9) wrongful and/or unjust enrichment; and

10) declaratory relief.

The five named Plaintiffs are:

- Jeffrey Melton, a Tennessee resident who purchased a Century GP 1975 rifle from J&G Sales in Arizona;

- Ezekiel Morris, an Illinois resident who purchased a new Century OPAP rifle from Shooting Sports in Illinois;

- Tommy Allen Johnson, a Florida resident who purchased a Century NPAP rifle from Take Aim Guns in Florida;

- Juan Valdes, a Florida resident who purchased a Century M70AB2 rifle from Miami Police Supply a/k/a Mark's Guns Corp. in Florida; and

- Manville Smith, a Florida resident who purchased a Century M70 rifle from his father. The Complaint does not state where the purchase occurred.

## II.  LEGAL STANDARD

"A pleading that states a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed factual allegations are not required, but a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

Where a cause of action sounds in fraud, the heightened standard in Federal Rule of Civil Procedure 9(b) also must be satisfied. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. FED. R. CIV. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (internal citations omitted).

### III. ANALYSIS

A. **Standing**

Century moves to dismiss all counts for lack of standing. Article III of the U.S. Constitution limits federal court jurisdiction to actual cases and controversies. *See Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 (11th Cir. 1991) (citing U.S. CONST. art. III, § 2). "The standing doctrine is an aspect of this case or controversy requirement and has its origins in 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (internal citations omitted). Accordingly, "standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1301 (11th Cir. 2008).

Because standing is jurisdictional, "a dismissal for lack of standing is essentially the same as a dismissal for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Mitchell v. Balboa Ins. Co.*, No. 11-cv-02580, 2012 U.S. Dist. LEXIS 85645, at *5 (M.D. Fla. June 20, 2012) (citing *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008)). The party invoking federal jurisdiction has the burden of proving standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* In a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct" may be sufficient to allege standing because "on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotations omitted).

To have Article III standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006) (internal quotations omitted). Accordingly, constitutional standing has three elements: (1) "the plaintiff must have suffered an injury in fact—an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted).

Century argues that Plaintiffs have no standing because the Complaint does not allege that the defect actually manifested itself in an unintentional firing or that Plaintiffs were injured by an unintentional firing. Century asserts that claims for defective design or failure to warn, without a corresponding injury, are impermissible "no-injury" products liability claims. In support of this assertion, Century cites cases in which claims were dismissed for lack of standing where plaintiffs sought damages for costs of remedying safety hazards.

Plaintiffs argue that standing is sufficient where plaintiffs claim economic harm such as overpayment, loss of value, or loss of usefulness emanating from the loss of their benefit of the bargain. Indeed, if "benefit of the bargain" damages are theoretically available for the causes of action that have been asserted, dismissal on the pleadings is premature. *See Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 (5th Cir. 2001); *see also Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014) (economic harm is a well-established injury-in-fact under federal standing jurisprudence). Here, Plaintiffs allege in their request for relief "compensatory damages that includes the cost of repair, replacement, or modification of the Safety Device defect" and request that "Century repair and or replace" Plaintiffs' rifles. Therefore, Plaintiffs

have pleaded economic harm sufficient to satisfy Article III standing. Accordingly, the Court **DENIES** Century's motion to dismiss for lack of standing.

B.     **Choice of Law**

Most of the ten counts asserted against Century arise under state law. Generally, a federal court hearing state law claims applies the choice-of-law rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Therefore, the Court applies Florida's choice-of-law rules to Plaintiffs' claims.

Florida's choice-of-law rules for tort actions are based on the "'most significant relationship test' outlined in the Restatement (Second) of Conflict of Laws." *Id.* (quoting *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)). Courts consider four types of contacts to determine which state has the most significant relationship to the matter: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (2) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* A court should evaluate these contacts "according to their relative importance with respect to the particular issue." *Id.* However, the first contact is generally the most important, as "absent special circumstances, '[t]he state where the injury occurred would…be the decisive consideration in determining the applicable choice of law.'" *Pysca Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1220 (S.D. Fla. 2008) (quoting *Bishop*, 389 So. 2d at 1001). The Court applies Florida's most significant relationship choice-of-law rule to all five Plaintiffs below.

In any choice-of-law analysis, a fundamental issue is "whether a conflict actually exists." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009). "'Simply stated, [a false conflict occurs]…when the laws of the competing states are substantially similar.'" *Id.* (quoting

-6-

-7-

*Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.2d 1228, 1234 (11th Cir. 2006)) (alterations in original). "A true conflict exists when two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result." *Id.*

### 1. *Plaintiffs Johnson and Valdes*

The state of Florida is the sole jurisdiction that has contacts to Johnson and Valdes' claims. Johnson and Valdes are each residents of Florida who each purchased their Century rifles in Florida. Thus, applying Florida's "most significant relationship" choice-of-law rule, Florida law governs Johnson and Valdes' claims.

### 2. *Plaintiff Melton*

The states of Tennessee and Arizona are each jurisdictions that have potential contacts to Melton's claims. Melton is a resident of Tennessee who purchased his Century rifle in Arizona—where the alleged injury occurred. The Court finds that these factors, when evaluated according to their relative importance to Melton's claims, indicate that Arizona has a more significant relationship to Melton's claims than Tennessee. Thus, applying Florida's "most significant relationship" choice-of-law rule, Arizona law governs Melton's claims.

### 3. *Plaintiff Morris*

The state of Illinois is the sole jurisdiction that has contacts with Morris' claims. Morris is a resident of Illinois who purchased his Century rifle in Illinois. Thus, applying Florida's "most significant relationship" choice-of-law rule, Illinois law governs Morris' claims.

### 4. *Plaintiff Smith*

The state of Florida is the sole jurisdiction that has contacts to Smith's claims. Smith is a resident of Florida. The Complaint does not state where he purchased the rifle, but only that he

purchased it from his father. Given the alleged facts at this time, applying Florida's "most significant relationship" choice-of-law rule, Florida law governs Smith's claims.

C.     **Counts 2, 3, 6, 7 and 8:  Tort Claims**

Century moves to dismiss Counts 2, 3, 6, 7 and 8, which assert: (1) negligence; (2) strict liability; (3) fraudulent inducement and/or suppression; (4) negligent failure to disclose, failure to warn, concealment and misrepresentation; and (5) fraudulent concealment and intentional failure to warn. Century argues that all five tort claims are barred by the economic loss rule and that Plaintiffs' fraud claims do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

As an initial matter, Plaintiffs' fraud claims satisfy Rule 9(b). Plaintiffs' assertions of reasonable and justifiable reliance on Century's allegedly deliberate silence concerning its rifles' safety mechanisms and on Century's allegedly false representation in the rifles' manuals are sufficient. Therefore, Plaintiffs' fraud claims are not dismissed on this ground.

1.     ***Johnson, Valdes, and Smith's Tort Claims Under Florida Law***

The Court examined Florida's economic loss rule in depth in *In re Takata Airbag Products Liability Litigation*:

> "[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401 (Fla. 2013). The Florida Supreme Court has defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profit—without any claim of personal injury or damage to other property." *Id.* (internal quotation marks omitted). Florida's Supreme Court has explained that "[t]he rule has its roots in the products liability arena, and was primarily intended to limit actions in the products liability context." *Id.* Specifically, the court explained the economic loss rule is "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby

-8-

encourages citizens to avoid causing injury physical harm to others." *Id.* (internal quotation marks omitted).

In an effort to "roll back the economic loss rule" after an era of "unprincipled extension," Florida's Supreme Court expressly limited the application of the economic loss rule to the products liability context. *Id.* In doing so, the court noted several exceptions to the economic loss rule, including "fraudulent inducement, and negligent misrepresentation, or free-standing statutory causes of action." *Id.* However, the fraudulent inducement and negligent misrepresentation cases to which the court cited were outside of the products liability context. *See id.* at nn.7, 8. These exceptions were irrelevant to the decision reached in *Tiara*.

The question before the Court, then, is whether Florida's Supreme Court, by its dicta, intended to abridge the economic loss rule in the products liability setting to allow fraudulent inducement and negligent misrepresentation claims (and by implication fraudulent concealment claims), even where the action for fraud depends upon precisely the same allegations as a warranty claim—*i.e.*, a claim the product failed to work as promised.

The Court agrees with other courts in this Circuit that have concluded that Florida's Supreme Court did not intend to allow such products liability claims to survive. *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1337-39 (S.D. Fla. 2013); *Burns v. Winnebago Indus., Inc.*, No. 8:13-cv-1427-T-24, 2013 U.S. Dist. LEXIS 116377, at *9 (M.D. Fla. Aug. 16, 2013) (holding that fraudulent inducement and negligent misrepresentation exceptions to the economic loss rule generally arise in the context of contractual privity cases, not in products liability actions, and finding that economic loss rule barred claims of fraudulent concealment and negligent misrepresentation in the products liability context); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 130md-2495, 2015 U.S. Dist. LEXIS 78898, at *17-18 (N.D. Ga. June 18, 2015) (applying Florida law and stating economic loss rule barred action for fraudulent concealment in products liability case because the alleged misrepresentation concerned the heart of the parties' agreement and "simply applying the label of fraud to a cause of action will not suffice to subvert the sound policy rationales underlying the economic loss rule.").

In *Aprigliano*, the court found that the plaintiffs' "cause of action for negligent misrepresentation is dependent on the same fundamental allegations contained in the breach of warranty

claim—specifically, that Honda breached the terms of its Warranties by providing Plaintiffs with defective motorcycles...." 979 F. Supp. 2d at 1338. The court explained that "[u]sually claims for negligent misrepresentation are barred by the economic loss rule where, as here, there are claims for breach of warranty alongside tort claims and the allegations contained in both are similar." *Id.* Accordingly, the court held the negligent misrepresentation claim was barred by the economic loss rule. In explaining its analysis, the court quoted *Burns*, stating that

> [T]o hold otherwise would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule.

*Id.* (citing *Burns*, 2013 U.S. Dist. LEXIS 116377, at *9).

193 F. Supp. 3d 1324, 1338-39 (S.D. Fla. 2017).

Here, Plaintiffs' five tort claims pertain only to the quality of Century's products, *i.e.*, the rifles are not as safe (and may at times be lethally dangerous) as advertised. Plaintiffs allege only economic harm arising from the claims, precisely what a breach of warranty claim would allege—namely that Century's rifles did not work as promised. Because the Court holds that Florida's economic loss rule applies to all such tort claims, the Court **GRANTS** Century's motion to dismiss Counts 2, 3, 6, 7 and 8 as to Johnson, Valdes, and Smith

2. ***Melton's Tort Claims Under Arizona Law***

Century argues that Arizona's economic loss rule bars Melton's tort claims.[1] However, further research reveals that Arizona does not apply the economic loss rule in all circumstances, and instead takes a case-by-case approach.

---

[1] In support of its argument, Century cites *Evans v. Singer*, 518 F. Supp. 2d 1134, 1141-42 (D. Ariz. 2007). In their response brief, Plaintiffs do not address Arizona law.

The Supreme Court of Arizona has stated, "[i]n the products liability context, [this court] declined to categorically bar tort recovery of economic losses. Instead [this court] reasoned that 'each case must be examined to determine whether the facts preponderate in favor of the application of tort law or commercial law exclusively or a combination of the two.'" *Flagstaff Affordable Hous. L.P. v. Design Alliance, Inc.*, 223 P.3d 664, 668 (Ariz. 2010) (quoting *Salt River Project Agric. Improvement & Power Dist. V. Westinghouse Elec. Corp.*, 694 P.2d 198, 210 (Ariz. 1984)). "If the court determines that tort principles are appropriate in the circumstances, the plaintiff may rely on strict liability..., negligence, or any other applicable tort theory." *Salt River*, 694 P.2d at 210. The *Salt River* court outlined a three-factor test for determining, on a case-specific basis, whether to apply the economic loss rule to defective product claims. *See Flagstaff*, 223 P.3d at 670; *see also Salt River*, 694 P.2d at 209 ("Rather than adopting the majority rule as a blanket disallowance of tort recovery for economic losses, we think the better rule is one which examines the loss in light of the nature of the defect that caused it, the manner in which it occurred, and the nature of any other contemporaneous losses."). Although this "minority view" has been criticized, including by the Supreme Court of the United States,[2] it continues to be the law of Arizona. *See Flagstaff*, 223 P.3d at 670. Further, the *Flagstaff* court implied that the economic loss rule does "not apply to negligence claims by a plaintiff who has no contractual relationship with the defendant" (like Melton and Century) because the policy concerns underlying the economic loss doctrine are not implicated when the plaintiff lacks privity and cannot pursue contractual remedies. *See id.* at 671.

Here, applying Arizona's three-factor analysis, Plaintiffs allege facts to support their tort claims under Arizona law. Although the only harm alleged is economic loss, a defect in the

---

[2] In *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 869-70, (1986), the Supreme Court refused to apply a *Salt River* approach to a products liability claim under admiralty law.

safety selector that permits the rifle to fire without a trigger pull could be considered unreasonably dangerous as it may cause substantial risk of death or serious injury. The claims are further supported because of Plaintiffs' lack of privity with Century and the resulting unavailability of contractual remedies. Therefore, Plaintiffs state a claim upon which relief can be granted as to Melton for all five tort claims. Accordingly, the Court **DENIES** Century's motion to dismiss as to Counts 2, 3, 6, 7 and 8 as to Melton.

### 3.   *Morris' Tort Claims Under Illinois Law*

Century argues Morris' tort claims are barred because in Illinois, a claim that presents an economic loss is not recoverable in tort without injury to a plaintiff's person or property.[3] But, this general Illinois principle is not without exception. Illinois applies "three exceptions to the economic loss rule: (1) where the plaintiff sustained damage, *i.e., personal injury or property damage*, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 452 (Ill. 1982)) (internal citations omitted) (emphasis in original).

Here, Plaintiffs do not allege there is any accompanying injury or property damage. Therefore, Morris' claims for negligence and strict liability are barred by Illinois' economic loss rule. However, Counts 6, 7 and 8 all involve either fraud or negligent misrepresentation, which fall within Illinois' exceptions. Thus, these claims cannot be dismissed at this stage of litigation.

---

[3] In support of its argument, Century cites *Donovan v. County of Lake*, 951 N.E.2d 1256, 1262-63 (Ill. Ct. App. 2011).

Accordingly, the Court **GRANTS** Century's motion to dismiss as to Counts 2 and 3 as to Morris, and **DENIES** Century's motion to dismiss as to Counts 6, 7 and 8 as to Morris.

### D. Counts 4 and 5: Breach of the Implied Warranty of Merchantability and Violation of the Magnuson-Moss Warranty Act

Century moves to dismiss Counts 4 and 5, which assert breach of the implied warranty of merchantability and violation of the Magnuson-Moss Warranty Act. At oral argument, Plaintiffs' counsel stated that Plaintiffs retreat on Counts 4 and 5 in light of *Takata*, in which the Court held that Florida law requires privity to sustain a breach of implied warranty claim. 193 F. Supp. 3d at 1346; *see also Mesa v. BMW of N. Am.*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321 (S.D. Fla. 2009) ("Florida law requires privity of contract to sustain a breach of implied warranty claim.").

Like Florida, Arizona and Illinois also require privity for implied warranty claims. *See Flory v. Silvercrest Indus.*, 633 P.2d 383, 388 (1981) ("economic losses are not recoverable for breach of implied warranty in the absence of privity of contract."); *Szajna v. Gen. Motors Corp.*, 503 N.E.2d 760, 767 (Ill. 1986) ("We…declined to abolish the privity requirement in implied warranty economic loss cases."). Here, four of the named Plaintiffs purchased their rifles from non-party sellers and the fifth named Plaintiff purchased his rifle from his father. Thus, Plaintiffs do not establish the privity required to sustain the breach of implied warranty claims.

The Magnuson-Moss Warranty Act gives consumers a private right of action against warrantors for a breach of warranty, as defined by state law. *See* 15 U.S.C. § 2301(7). However, a Magnuson-Moss Warranty Act claim only exists if a valid breach of warranty claim is also stated. *Bailey v. Monaco Coach Corp.*, 168 Fed. App'x 893, 894 n.1 (11th Cir. 2006). Because

Plaintiffs do not state a cognizable claim for breach of implied warranty, they also have no claim under the Magnuson-Moss Warranty Act.[4] Accordingly, the Court **GRANTS** Century's motion to dismiss Counts 4 and 5.

E. **Count 1: Violation of the Florida Deceptive and Unfair Trade Practices Act**

Century moves to dismiss Count 1, which asserts violation of the Florida Deceptive and Unfair Trade Practices Act. Plaintiffs assert that Century employed fraud, deception, false promises, misrepresentation and the knowing concealment, suppression, or omission of a material fact in its distribution, sale, marketing, and/or advertisement of its rifles by making false representations about the performance of the rifles—particularly the safety mechanism—and by failing to disclose the alleged defect.

Century first argues that Melton and Morris cannot bring a claim under the Florida Deceptive and Unfair Trade Practices Act because neither Melton nor Morris purchased their rifles in Florida or live in Florida. Plaintiffs respond that the Act applies to non-resident consumers. Florida courts are split on whether the Act extends to out-of-state consumers, and the Florida Supreme Court has not addressed the issue. Some Florida case law holds that the Act should be applied only to in-state consumers. *See e.g., Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1093-94 (Fla. Dist. Ct. App. 2003) (affirming refusal to certify nationwide class in Florida Deceptive and Unfair Trade Practices Act suit against manufacturer of calcium supplements where injury occurred at points of sale outside Florida); *OCE Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. Dist. Ct. App. 2000) (reversing

---

[4] Illinois law seems to sometimes permit a Magnuson-Moss Warranty Act claim even without a valid state claim for breach of implied warranty due to lack of privity. Despite disagreement from many federal courts, Illinois relaxes the privity requirement when a consumer sues the manufacturer under the Magnuson-Moss Warranty Act and shows that the manufacturer has issued a written warranty on the product. *See Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1064 (Ill. 2007); *Szajna*, 503 N.E.2d at 769. In any event, because Plaintiffs retreated from Counts 4 and 5 at oral argument and neither party briefed the issue, the Court declines to analyze Morris' Magnuson-Moss Warranty Act claim under Illinois law.

order certifying nationwide class under Florida Deceptive and Unfair Trade Practices Act because "only in-state consumers can pursue a valid claim"); *Coastal Physician Servs. of Broward Cnty., Inc. v. Ortiz*, 764 So. 2d 7, 8 (Fla. Dist. Ct. App. 1999) (in class action based on debt collection activity by Florida physician's office, limiting discovery to debt collection materials sent to in-state consumers and concluding that Florida Deceptive and Unfair Trade Practices Act was enacted to protect in-state consumers). However, other Florida case law has permitted claims by out-of-state consumers. *See Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen.*, 761 So. 2d 1256, 1262 (Fla. Dist. Ct. App. 2000) (Florida Deceptive and Unfair Trade Practices Act claim could be based on communications to out-of-state consumers "where the allegations in this case reflect that the offending conduct occurred entirely within this state."); *Renaissance Cruises, Inc. v. Glassman*, 738 So.2d 436, 439 (Fla. Dist. Ct. App. 1999) (affirming certification of nationwide class in Florida Deceptive and Unfair Trade Practices Act suit related to port charges for cruises where defendant's operations were controlled and carried out from Florida and any overages were kept by defendant in Florida).

Most federal courts in the Southern District of Florida that have considered the issue have followed *Millennium*. *See Bank of Am., N.A. v. Zaskey*, No. 9:15-cv-81325, 2016 U.S. Dist. LEXIS 65515, at *29 (S.D. Fla. May 18, 2016). *But see Stein v. Marquis Yachts, LLC*, No. 14-24756-CIV, 2015 U.S. Dist. LEXIS 35088, at *17-18 (S.D. Fla. Mar. 20, 2015) (Florida Deceptive and Unfair Trade Practices Act claims dismissed where plaintiff purchased goods in Canada and there were no allegations about any pre-sale representations made in Florida).

Here, Melton's and Morris' injuries occurred where the rifles were purchased—outside of Florida. Following the reasoning in *Hutson* or *Stein*, this could preclude Melton and Morris from bringing a claim under the Florida Deceptive and Unfair Trade Practices Act. However,

Plaintiffs have alleged many facts connecting Florida to Century's alleged misconduct giving rise to the claim. For example, the Complaint states that Century designed, manufactured, marketed and distributed the rifles in Florida; that Century willfully, knowingly, and/or recklessly committed acts in Florida for the express purpose of concealing safety defects; that all Century entities are citizens of Florida; and that Century misrepresented or concealed material facts in its manuals and on its website, both in Florida. Even under *Hutson* or *Stein*, sufficient connections with Florida could justify application of the Florida Deceptive and Unfair Trade Practices Act. Therefore, the court will not dismiss the Florida Deceptive and Unfair Trade Practices Act claim as to Melton or Morris for failure to state a claim. However, the Court likely will readdress the issue after further fact development at class certification. *See, e.g., Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 626-27 (S.D. Fla. 2008) (denying class certification; applying Florida's "most significant relationship" choice-of-law rule and determining that Missouri law was more appropriate than Florida law regarding plaintiff's unfair and deceptive trade practices claim where plaintiff received offending marketing materials in Missouri, was a Missouri citizen, purchased, received, and used the products in Missouri, and was "injured" in Missouri).

Next, Century argues that Plaintiffs fail to allege deceptive or unfair acts or practices. However, the Complaint expressly alleges numerous discrete acts that, if true, are deceptive, especially considering the broad concept of "unfair or deceptive" conduct under the Act. *See TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 945 F. Supp. 2d 1331, 1344 (M.D. Fla. 2013). Indeed, courts have denied motions to dismiss Florida Deceptive and Unfair Trade Practices Act claims arising from allegations of false representations about a product's safety or effectiveness. *See, e.g., Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. Dist. Ct.

App. 2004) (reversing dismissal where plaintiff alleged that car manufacturer violated Florida Deceptive and Unfair Trade Practices Act by advertising that a car had effective seatbelts when in fact it did not); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. Dist. Ct. App. 2000) (reversing dismissal of Florida Deceptive and Unfair Trade Practices Act claim alleging defendant's nondisclosure of certain functionality caused diminished value of cell phones).

Third, Century argues that Plaintiffs fail to show how they have been aggrieved by the alleged unfair acts. But as explained *supra*, in the standing analysis, Plaintiffs sufficiently allege harm related to the diminished benefit of the bargain based on ownership of defective rifles. Finally, Century argues that the Complaint makes no allegations about the difference in market value of the rifles at the time of sale. However, the Complaint seeks diminished-value damages and it is well settled that such damages are recoverable under the Florida Deceptive and Unfair Trade Practices Act. *See Collins*, 894 So. 2d at 990; *Davis*, 776 So.2d at 975.

Given the deference afforded to plaintiffs on a motion to dismiss, Plaintiffs have alleged sufficient facts to state a claim under the Florida Deceptive and Unfair Trade Practices Act. Accordingly, the Court **DENIES** Century's motion to dismiss Count 1.

F.  **Count 9: Unjust Enrichment**

Century moves to dismiss Count 9, which asserts unjust enrichment as an alternative theory. The same analysis applies to all five named Plaintiffs as there is no conflict of laws because the laws of Arizona, Illinois and Florida all "produce the same result." *See Cooper*, 575 F.3d at 1171. In Florida, the elements of a claim for unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof. *Aceto Corp. v.*

*TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013). In Arizona and Illinois, the elements are similar.[5]

Century first argues that although a plaintiff may plead unjust enrichment as an alternative equitable theory to its legal causes of action, Plaintiffs' claim for unjust enrichment fails because it relies on the same factual predicates as the legal causes of action and is therefore not a true alternative theory.[6] But here, the Complaint includes all elements of unjust enrichment by claiming that the Century rifles have a diminished value, and thus Century has reaped profits in excess of what should have been earned for the sale of its allegedly defective rifles.

Century next argues that there is no ***direct*** benefit under Florida law because no named Plaintiff purchased a rifle directly from Century. But Century's argument is contrary to Florida law, which provides that no direct contact is required for a direct benefit to be conferred. *See, e.g., Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 U.S. Dist. LEXIS 86472, at *5-6 (S.D. Fla. Nov. 26, 2007) ("Defendant is correct in stating that 'Florida law does not support a cause of action for unjust enrichment unless the plaintiff can allege that he conferred a direct benefit on the defendant.'...However, Defendant erroneously equates direct *contact* with direct *benefit* in arguing that '[b]ecause plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff conferred no direct benefit on Motorola.'") (internal citations omitted) (emphasis in original); *Zaki Kulaibee Establishment v. McFlicker*, 788 F. Supp. 2d 1363, 1377

---

[5] Arizona enforces a claim of unjust enrichment when five elements are satisfied: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011). In Illinois, "to state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

[6] In support of its argument, Century cites *Licul v. Volkswagen Grp. of Am.*, No. 13-61686-CIV, 2013 U.S. Dist. LEXIS 171627, at *19-22 (S.D. Fla. Dec. 5, 2013) (when "[p]laintiffs' unjust enrichment claim merely restates their other causes of action, it fails as a matter of law.").

(S.D. Fla. 2011) (no direct contact in the form of contractual relationship required to show direct benefit). Here, Plaintiffs' Complaint adequately alleges facts to satisfy the elements of unjust enrichment as an alternative theory of relief under the laws of Florida, Arizona, or Illinois. Accordingly, the Court **DENIES** Century's motion to dismiss Count 9.

G.     **Count 10: Declaratory Relief**

Century moves to dismiss Count 10, which asserts a residual claim for declaratory relief. Plaintiffs seek a declaration that: (1) all guns with the full-auto safety selector device have a common design defect that causes the guns to fire unexpectedly without a trigger pull when the safety lever is above the "safe" position; (2) Century knew of the safety selector defect in the guns; and (3) Century shall issue a recall of all guns with the safety selector defect and compensate Plaintiffs.

In a diversity case, federal courts apply federal law to procedural matters and apply the law of the forum state to substantive matters. *See Coccaro v. GEICO Gen. Ins. Co.*, 648 Fed. App'x 876, 880 (11th Cir. 2016) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Florida's Declaratory Judgment Act is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights. *Id.* Because declaratory relief presents a procedural issue, the Court construes Plaintiffs' claim for declaratory and injunctive relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

The federal Act grants federal courts discretion to decide whether to issue a declaratory judgment. 28 U.S.C., § 2201(a) ("In an actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration.") (emphasis added). Generally, the Act allows prospective defendants to sue to establish non-liability, or affords a party threatened with liability an opportunity for adjudication before its adversary commences

-19-

litigation. Neither scenario exists here. Here, the rights and legal relations of Plaintiffs and Century are being adjudicated through the other claims; therefore, declaratory relief is unlikely to serve a useful purpose. Accordingly, the Court declines to exercise its discretion to grant declaratory relief and **DISMISSES** Count 10.

### IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Century's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Counts 4, 5 and 10 are **DISMISSED** in full;

- Counts 2 and 3 are **DISMISSED** as to all Plaintiffs except Melton;

- Counts 6, 7 and 8 are **DISMISSED** as to Plaintiffs Johnson, Valdes and Smith only; and

- Century's motion to dismiss Counts 1 and 9 is **DENIED.**

Century shall file an answer to the remaining counts no later than **April 12, 2017.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20 of March 2017.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record