# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  1:16-cv-21008-CIV-MORENO/O'SULLIVAN

| | |
|---|---|
| JEFFREY MELTON, EZEKIEL MORRIS, TOMMY ALLEN, JUAN VALDES, and MANVILLE SMITH, Individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>CENTURY INTERNATIONAL ARMS CORP.; CENTURY ARMS, INC.; CENTURY ARMS OF VERMONT, INC.; and CENTURY INTERNATIONAL ARMS OF VERMONT, INC.,<br><br>            Defendants. | CLASS ACTION |

### DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND TO STRIKE PLAINTIFFS' NOTICES TO CONDUCT SECOND DEPOSITIONS OF PHILIP BURNOR AND DEREK WATKINS AND INCORPORATED MEMORANDUM IN SUPPORT

**PISCIOTTI MALSCH**
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
Telephone:     (973) 245-8100
Facsimile:     (973) 245-8101

*Attorneys for Defendants*

Defendants Century International Arms, Corp., Century Arms, Inc., Century Arms of Vermont, Inc., and Century International Arms of Vermont, Inc. (collectively, "Century" or "Defendants"), pursuant to Rules 26(c) and 30(a)(2) of the Federal Rules of Civil Procedure (the "Federal Rules"), file the following Motion for a Protective Order and Motion to Strike Plaintiffs' Notices to Conduct Second Depositions of Philip Burnor and Derek Watkins (the "Motion).

**PRELIMINARY STATEMENT**

Although already completing depositions of Mr. Burnor (Defendants' employee) and Mr. Watkins (one of Defendants' experts), Plaintiffs unilaterally noticed second depositions of both witnesses. This attempt to take supplemental depositions is both procedurally and substantively improper and Plaintiffs' procedural insufficiencies alone provide reason to grant this Motion. First, Plaintiffs' deposition notices failed to comply with the timing requirements of either the Local Rules or the Federal Rules. Second, Plaintiffs, as the party seeking the second depositions, were required under Rule 30(a)(2) to seek leave from the Court prior to noticing these depositions, which they failed to do. Beyond these procedural shortcomings, as shown below, Plaintiffs' request is not legally or equitably supportable. Plaintiffs are required to demonstrate good cause to take the second depositions they have requested, which they have not and cannot do. Further, a review of the procedural history of this case reveals that there is no equitable or legal basis to seek these supplemental depositions. Thus, given the procedural and substantive deficiencies in Plaintiffs' request for second depositions of Mr. Burnor and Mr. Watkins, this Motion should be granted.

**RELEVANT BACKGROUND**

Defendants import and manufacture firearms. Relative to this case, one aspect of the business is to purchase firearms and firearm parts from foreign locations (manufacturers,

1

governments, etc.) and then import the firearms based on the applicable governmental regulations. If the firearms can be sold as-is, they are imported and re-sold. If not, the firearms are disassembled and then reassembled in the United States in conformity with the law. In bringing this class action, Plaintiffs contend that AK-style firearms imported by Century[1] contain a defective condition, which is defined to be a situation where the safety lever can rise above the dust cover and cause an unintentional discharge. Defendants dispute that this is a defective condition because so long as the dust cover (a component part of the firearm) is not removed, the condition cannot present itself. Additionally, since these firearms are manufactured from imported surplus parts, no two firearms are identical, even within the same model. Therefore, it would be impossible to determine which firearm would contain an alleged defect. The facts in evidence reveal that there are many AK-style firearms that cannot exhibit the alleged defect, even with the dust cover removed.

## RELEVANT PROCEDURAL HISTORY

**I.  SCHEDULING ORDER.**

The Court's original scheduling order required Plaintiffs to complete class certification discovery, file their motion for class certification, and disclose class certification experts by December 15, 2017. (Dkt. No. 31.) The deadline to complete class certification discovery and depositions of Plaintiffs' class certification experts and to oppose the class certification motion was February 5, 2018. (Ibid.) However, an Amended Scheduling Order was subsequently entered, which set forth the following deadlines:

January 15, 2018             Deadline for party depositions.

---

[1] Plaintiffs' definition of "class weapon" has been a moving target throughout the litigation. Plaintiffs originally contended that every single AK-style firearm was a class weapon, but when the evidence revealed that one of the rifles will not exhibit the alleged defect, Plaintiffs have attempted to modify the definition.

2

| | |
|---|---|
| February 1, 2018 | Deadline for motion for class certification and disclosure of initial class certification expert reports. |
| March 23, 2018 | Deadline to complete class certification discovery, to complete depositions of Plaintiffs' class certification experts, and to file an opposition to the motion for class certification. |
| April 1, 2018 | Deadline for Plaintiffs' reply brief in support of motion for class certification. |

## II.   PLAINTIFFS' CLASS CERTIFICATION DISCOVERY.

In December 2017, Plaintiffs served a deposition notice pursuant to Rule 30(b)(6), which contained thirty separate topics and twenty-nine separate requests for production of documents. (Ex. A, 2d Supp. 30(b)(6) Dep. Notice.) The topics listed for the deposition included:

- How the Class Weapons were manufactured, imported, assembled, tested, and distributed, "e.g., which models are imported and sold as-is, which models are imported as machine guns, and which models are imported as parts kits." (Id. at Topic 12.)

- All modifications of the dust cover and the safety selector from 1995 until the present. (Id. at Topics 13-14.)

- Information suggesting that the Class Weapons do or do not have the alleged defect. (Id. at Topic 28.)

- How the Class Weapons are manufactured and assembled. (Id. at Topic 26.)

On January 11, 2018, Defendants produced Philip Burnor, Century's Surplus Parts Manager, and Andrew Chamberlin, the Quality Manager. (Dkt. No. 87-4, Burnor Dep. at 4:2-25, 19:20-23, 177:2-7; Dkt. No. 87-5, Chamberlin Dep. at 4:2-25, 49:17-50:9, 95:4-8.) During Mr. Burnor's deposition, he specifically testified about Century's importation of surplus products from foreign countries. (Dkt. No. 87-4, Burnor Dep. at 160:9 – 161:5, 165:14-16, 167:15 – 168:17.)

He further explained that, depending on the original configuration, surplus AK firearms can either be (1) imported and sold without change; (2) imported and modified to comply with federal law; or (3) imported into a bonded facility, fully disassembled, and sold as part kits or reassembled into a complete firearm with a U.S.-made barrel, receiver, and other parts to comply with the federal regulations (18 U.S.C. § 922(r)).  (Id. at 58:18 – 72:20.)  Mr. Burnor also testified how certain AK-style firearms with a low capacity (under ten rounds) and thumbhole stock could be sold without modification.  (Id. at 59:11 – 60:20, 61:5-12, 62:3-13.)  Mr. Burnor further testified about how the process of deciding which parts to utilize or be replaced is not uniform and that the original safety lever is used unless it is in a damaged condition.  (Id. at 17:14-22, 172:23 – 173:15.)  The assembly and inspection process was also discussed.  (Dkt. No. 87-5, Chamberlin Dep. at 48:8-12, 51:19 – 52:14, 53:4-22.)

Importantly, at no point during this time period did Plaintiffs make a request under Rule 34 to inspect Century's facility, to inspect Class Weapons maintained by Century, or to inspect the surplus parts/materials utilized by Century for the purported Class Weapons.  Instead, Plaintiffs opted to rely solely on the inspections performed by its expert, David Byron, to carry their burden of showing that the alleged defect is present in all identified class weapons.[2]

### III.   CLASS CERTIFICATION MOTION.

On February 1, 2018, Plaintiffs filed their Motion for Class Certification.  (Dkt. No. 72.) With their Motion for Class Certification, Plaintiffs included a Declaration from their expert,

---

[2] The burden of establishing the propriety of class certification rests with the advocate of the class. Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003); Brooks v. S. Bell Tel. & Tel. Co., 133 F.R.D. 54, 56 (S.D. Fla. 1990).  Evidentiary proof is required to show compliance with Rule 23, and the party seeking class certification must prove compliance by a preponderance of the evidence.  In re Photochromic Lens Antitrust Litig., 2014 U.S. Dist. LEXIS 46107, at *30 (M.D. Fla. April 3, 2014).

David Byron, who, among other things, offered opinions about establishing the class and calculating damages on a class-wide basis. (Dkt. No. 72-1.) Plaintiffs' expert opined that, based on his inspection of seven AK-style firearms, the class defect exists in over thirty-five different model rifles over the course of thirty years (over 1.25 million rifles). (Ibid.) He also opined that the dust cover on these rifles could not prevent the alleged defective condition from occurring.

### IV. DEFENDANTS DEPOSED PLAINTIFFS' CLASS CERTIFICATION EXPERT, COMPLETED CLASS CERTIFICATION DISCOVERY, AND FILED AN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION.

In accordance with the Amended Scheduling Order, Defendants conducted the deposition of Plaintiffs' class certification expert (David Byron) and completed class certification discovery. (See Dkt. No. 87-7, Byron Dep.) On March 23, 2018, Defendants filed their Response in Opposition to the Motion for Class Certification, which included reports from Defendants' experts. (Dkt. No. 81.)

### V. PLAINTIFFS DEPOSED ALL DEFENDANTS' EXPERTS.

As detailed in Defendants' prior submissions (Opposition to Class Certification Motion, Motion to Preclude David Byron), in order to form his opinions in this case, Mr. Byron inspected a total of seven AK-style firearms. When opposing the motion for class certification, Defendants submitted expert reports, which noted, among other things, that their experts had examined hundreds of purported class weapons. Mr. Vasquez, a former marine and ATF agent, had inspected numerous imported AK-style firearms, and Mr. Watkins inspected class weapons at Century's facility. Defense experts concluded that the alleged defect is not present on AK-style firearms with a dust cover and, even if the dust cover is removed, the alleged defect is still not present on all Class Weapons. Plaintiffs then deposed all Defendants' experts. (See Dkt. No. 116-1,

McCormick Dep.; Dkt. No. 117-1, Vasquez Dep.; Dkt. No. 118-1, Young Dep.; Dkt. No. 120-1, Watkins Dep.)[3]

### VI. IN THEIR REPLY IN SUPPORT OF THE MOTION FOR CLASS CERTIFICATION, PLAINTIFFS INCLUDED A NEW DECLARATION FROM THEIR CLASS CERTIFICATION EXPERT, WHICH CONTAINED NEW OPINIONS.

In support of their Reply Brief for Class Certification, Plaintiffs included another Declaration from their expert, David Byron. Having been confronted with the fact that his opinions about the class weapons were unsupportable, Mr. Byron requested the opportunity to inspect the firearms that had been inspected by the defense expert. The inspection, which occurred on April 4, 2018, was also attended by defense expert, Derek Watkins. In order to substantiate his previously-formed opinions, Mr. Byron then created a list of the guns that were either "conforming" or "non-conforming."[4] (Dkt. No. 105 at p. 6.) Any firearm he inspected that did not exhibit the defect despite being a model identified in the class, Mr. Byron considered that firearm to be "non-conforming." Additionally, Mr. Byron had originally opined that, based on his inspection of seven AK-style firearms, the dust cover is malleable and easily removed. However, during his subsequent inspection, he found numerous firearms that did not exhibit these purported conditions. Therefore, Mr. Byron speculated that the firearms must have been altered: "I believe

---

[3] During the deposition of Mr. Watkins, Plaintiffs' counsel asked him about any AK-style firearms he owns and any AK-style firearms that were imported or manufactured by Century. (Dkt. No. 120-1 at 113:11-17 (noting that he owns three AK-style firearms imported or manufactured by Century).)

[4] Mr. Byron's discussion of "conforming" versus "non-conforming" firearms ignored the direct testimony of Century's witnesses, who repeatedly noted that the internal parts of the models are not uniform inasmuch as they are surplus firearms and parts. (See, e.g., Dkt. No. 87-5, Chamberlin Dep. at 34:10-23, 36:11-20, 45:12-20, 52:15 – 53:17, 55:12-18, 58:13-17, 67:5-10, 75:24 – 76:4, 82:20 – 83;3, 88:7 – 91:10; see also Dkt. No. 87-4, Burnor Dep. at 58:24 – 60:6, 63:2 – 64:8, 77:9-14.)

6

that these weapons were tightened or altered to make it difficult to override the dust cover with the safety selector." (Dkt. No. 105, Byron Supp. Decl., ¶ 5.)

### VII. PLAINTIFFS FILED MOTIONS TO PRECLUDE ALL DEFENDANTS' EXPERTS.

Plaintiffs subsequently filed motions to preclude all defense experts. (See Dkt. Nos. 106-110.) In opposing these motions, Defendants submitted, among other things, declarations from Andrew Chamberlin, Phillip Burnor, and Derek Watkins. The declarations were required to address the new claims being made by Plaintiffs' expert in his supplemental declaration, which included the "non-conforming" versus "conforming" opinion and the allegation that rifles had been purposefully manipulated. (Dkt. No. 120-2, Burnor Decl., 119-2, Chamberlin Decl., 120-4, Watkins Decl.) Moreover, other than the affirmation that none of the firearms were in any way altered or manipulated, the declarations of Chamberlin and Burnor reiterated statements made during deposition or addressed topics that could have been raised during the deposition.

Mr. Watkins supplemental declaration also noted that the firearms inspected had not been tightened or altered in any way, and further explained how Mr. Byron's new opinions about "non-conforming" rifles in his supplemental declaration were incorrect. (Dkt. No. 120-4, Watkins Decl.) In moving to strike Mr. Watkins's from testifying, Plaintiffs largely relied on the declaration of their expert, requiring Mr. Watkins to address "the inaccuracy of Mr. Byron's new opinions," which involved the purchase of two Class Weapons. (Id. ¶ 3.)

### VIII. PLAINTIFFS REQUESTED SUPPLEMENTAL DEPOSITIONS OF PHILIP BURNOR AND DEREK WATKINS.

On June 15, 2018, Plaintiffs' counsel requested supplemental depositions of Mr. Burnor and Mr. Watkins. (Ex. B, Patterson Email 6/15/18.) Plaintiffs failed to articulate any basis or reason for the request. (Ibid.) Defendants responded that "Plaintiffs have not articulated any reasonable basis to conduct further depositions of either witness" and noted that they were "both

7

previously made available for deposition, at which time Plaintiffs were free to discuss any proper issues reasonably related to the case." (Ex. C, Erdreich Ltr. 6/19/18 at p. 2.)

Thereafter, Plaintiff served a letter, which purported to explain the bases for seeking a second deposition of both witnesses:

- Mr. Burnor: Plaintiff wants to conduct a supplemental deposition about the rifles used in the inspection and "the integrity of the rifles."
- Mr. Watkins: Plaintiff wants to depose Mr. Watkins about examining the rifles on two occasions, his knowledge about whether the rifles were altered, the non-conforming parts opinion, and his purchase of Century AK-style firearms. (Ex. D, Marino Ltr. 6/20/18.)

Plaintiffs further informed Defendants that they must produce these witnesses for a supplemental deposition or file a motion for a protective order with the Court. (Ibid.)

On June 22, 2018, Plaintiffs served deposition notices for Mr. Burnor and Mr. Watkins, setting supplemental depositions for June 28, 2018. (Ex. E, Dep. Notices.) The depositions were unilaterally set for Defendants' counsel's offices in New Jersey, despite the fact that neither witness is located in that State. (Ibid.) Additionally, the depositions were not limited in time or in scope. (Ibid.) Finally, the deposition notices also contained further requests for production to both witnesses. (Ibid.)

## STANDARD

Rule 30(a)(2) states that "[a] party must obtain leave of court" to conduct a deposition when "the parties have not stipulated to the deposition and . . . the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A). When a party files a motion for leave to conduct a second deposition, the principles set forth in Rule 26(b)(2) apply. Under Rule 26(b)(2)(C),

8

discovery should be limited if the Court determines that the requested discovery is (i) unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information sought; or (iii) the burden or expense on the proposed discovery outweighs the likely benefit. Id. at 26(b)(2)(C)(i)-(iii). In order to obtain leave to conduct a second deposition, the party seeking the second deposition must demonstrate "good cause to justify such a court order." Arugu v. City of Plantation, 2010 U.S. Dist. LEXIS 76034, at *9 (S.D. Fla. June 27, 2010) (citing Advisory Committee Note to 2000 Amendment to Fed. R. Civ. P. 30(d)).

## ARGUMENT

Defendants' motion should be granted because (1) Plaintiffs' deposition notices are procedurally improper; (2) Plaintiffs cannot demonstrate good cause for the second depositions; and (3) Plaintiffs have already had ample opportunity to depose these witnesses and conduct discovery on the issues at hand.

### I. PLAINTIFFS' DEPOSITION NOTICES SHOULD BE STRICKEN AS PROCEDURALLY IMPROPER.

#### A. The Deposition Notices Violate the Local and Federal Rules of Civil Procedure.

Procedurally, the Local Rules require any party seeking to take the deposition of a witness in another state to provide at least fourteen days' written notice. S.D. Fla. L. R. Civ. P. 26.1(h). "Failure to comply with this rule obviates the need for a protective order." Ibid. Here, the deposition notices for Mr. Burnor and Mr. Watkins were served on June 22, 2018 and scheduled the depositions for June 28, 2018 in New Jersey. (Ex. E, Dep. Notices.) The Notices also contained a Request for Production, which requested production of documents within six days. (Ibid.) Based on the Local Rules and the Federal Rules, these deposition notices are procedurally improper because (1) Plaintiffs did not provide fourteen days' written notice and (2) Plaintiffs

9

requested responses to a document demand within six days. See S.D. Fla. L. R. Civ. P. 26.1(h) (requiring fourteen days' notice for out-of-state depositions); see also Fed. R. Civ. P. 34(b)(2)(A) (requiring responses to document demands within thirty days unless a different time is "stipulated to under Rule 29 or . . . ordered by the Court"). Therefore, the deposition notices should be stricken.

**B. Plaintiffs Failed to Comply With Rule 30(a)(2)(A) Because They Never Sought Leave to Conduct Depositions of Witnesses Who Have Already Been Deposed.**

Rule 30(a)(2) states that "[a] party must obtain leave of court" to conduct a deposition when " the parties have not stipulated to the deposition and . . . the deponent has already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A). After Plaintiffs requested the second depositions of Mr. Burnor and Mr. Watkins, Defendants advised that they would not consent to such depositions. Accordingly, per the Federal Rules, Plaintiffs were then obligated to file a motion seeking leave of court to conduct the requested depositions. Instead, Plaintiffs served two deposition notices with requests for production and unliterally set dates for the depositions. Service of these notices contravenes the Federal Rules and is basis enough to strike Plaintiffs' deposition notices for Mr. Burnor and Mr. Watkins and grant this motion for protective order.

**II. DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER SHOULD BE GRANTED AND PLAINTIFFS SHOULD NOT BE PERMITTED TO CONDUCT SECOND DEPOSITIONS OF EITHER MR. BURNOR OR MR. WATKINS.**

Repeat depositions are generally disfavored. United States v. Stinson, 2016 U.S. Dist. LEXIS 63431, at *6 (M.D. Fla. May 13, 2016); Ast v. BNSF Ry. Co., 2011 U.S. Dist. LEXIS 123838 (D. Kan. Oct. 25, 2011). It is well-settled that a party seeking to conduct a second deposition of a witness must demonstrate good cause for the request. Arugu, 2010 U.S. Dist. LEXIS 76034, at *12; see also EEOC v. Holmes & Holmes Ind., Inc., 2011 U.S. Dist. LEXIS

10

140258, at *2 (D. Utah Dec. 6, 2011); Morrison v. Stephenson, 2008 U.S. Dist. LEXIS 6512, at *13 (S.D. Ohio Jan. 10, 2008).

For example, in Arugu, the Plaintiff sought leave to depose a witness a second time in order to obtain more information regarding the witness's disciplinary history, which was "uncovered" by the Plaintiff following the witness's deposition. 2010 U.S. Dist. LEXIS 76034, at *8-10. The Court held that Plaintiff's possession of new evidence was not sufficient to establish good cause, for a number of reasons, including the facts that counsel had plenty of time to prepare for the witness's deposition and counsel had not been precluded in any way from questioning the witness about his disciplinary history. Id. at *11-12. In a strongly-worded conclusion, the court held that if the circumstances under which Plaintiff was seeking a second deposition were deemed to be good cause, "then any party who, due to oversight or otherwise, failed to research the background of a deponent or failed to obtain relevant documents necessary to depose the witness, could re-depose the witness contending that the evidence was not previously known to counsel. Such a system would punish the well-prepared and reward the ill-prepared, thereby encouraging, or at least condoning, such lawyering." Id. at *12.

Here, Plaintiffs seek to conduct second depositions of two witnesses (Philip Burnor, Defendants' employee, and Derek Watkins, an expert witness) under circumstances similar to the ones seen in the Arugu case. Plaintiffs seek to ask Mr. Watkins further questions about his knowledge and understanding regarding the class weapons and his work in conjunction with this case. Plaintiffs were fully aware before Mr. Watkins's deposition that he had inspected the exemplar rifles on two occasions (once before issuing his report and then again when Plaintiffs' expert examined the rifles).

Similarly, Mr. Burnor's declaration contained a recitation of facts that were discussed during his deposition and concerned facts that Plaintiffs' specifically noticed the deposition for. Plaintiffs clearly had ample opportunity to depose Mr. Burnor and question him about the topics at issue (importing, manufacturing, etc.). Mr. Burnor's declaration simply does not provide a basis to seek a supplemental deposition. See Arugu, 2010 U.S. Dist. LEXIS 76034, at *12 (holding that there is no good cause to conduct a second deposition based upon the failure to ask questions during the original deposition).

To the extent the declarations contained "new" statements, these statements were in direct response to Plaintiffs' expert's (Mr. Byron) unsubstantiated claim that the rifles that were inspected had been "altered." Both Mr. Watkins and Mr. Burnor provided declarations attesting to the fact that the rifles had not, in any way, been altered or manipulated. These declarations were necessary to address Mr. Byron's unfounded claims. Moreover, it would be inequitable if Plaintiffs were afforded a second opportunity to depose a witness because they were forced to respond to Mr. Byron's unsubstantiated claims. Indeed, this would create a never-ending cycle of depositions if there was good cause to conduct a further deposition any time a declaration is filed. Importantly, this is not the law. See United States v. Stinson, 2016 U.S. Dist. LEXIS 63431, at *7 (M.D. Fla. May 13, 2016) (refusing to compel a second deposition of a witness "simply because his declaration refers to [additional evidence], the majority of which he could have been questioned about when he was deposed").

Moreover, in the case of Mr. Watkins, his declaration was filed in opposition to a motion to preclude his testimony. Mr. Watkins's declaration provided clarification and a response to specific criticisms, including the unsubstantiated claim of altering evidence. "Such clarifying declarations from experts are a routine part of Daubert motions." In re Fluidmaster, Inc. Water

12

Connector Components Prods. Liab. Litig., 2017 U.S. Dist. LEXIS 48792, at *49 (N.D. Ill. March 31, 2017).

In sum, Plaintiffs have had ample opportunity to conduct class certification discovery in this case, including conducting the depositions of Mr. Burnor and Mr. Watkins; the deadline to conduct class certification discovery, and file class certification briefs, has passed; and Plaintiffs cannot demonstrate good cause for seeking second depositions of either witness. Therefore, Plaintiffs' deposition notices should be stricken and Defendants' motion for protective order prohibiting the second depositions of these witnesses should be granted.[5]

## CONCLUSION

Based on the foregoing arguments and authorities, the court should enter a protective order prohibiting Plaintiffs from conducting any further depositions of 30(b)(6) witness Phil Burnor and/or expert witness Derek Watkins.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Defendants respectfully request oral argument on the issues set forth in this motion. Specifically, given the procedural history of this case, Defendant respectfully submits that oral argument would be helpful to the Court. Defendant estimates that the time required for argument would be one hour.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

The undersigned counsel for Defendants has conferred with Plaintiffs' counsel who has advised that if Defendants will not produce 30(b)(6) witness Philip Burnor or expert witness Derek

---

[5] Even if Plaintiffs were to have shown good cause to conduct second depositions of these witnesses and had not already had ample opportunity to conduct discovery in this regard, any second deposition of these witnesses would need to be strictly limited in both scope and duration. See FTC v. First Universal Lending, Ltd. Liab. Co., 2011 U.S. Dist. LEXIS 20019 (S.D. Fla. Feb. 12, 2011).

13

Watkins for a second deposition, they should seek a protective order.

Dated: Florham Park, New Jersey
June 27, 2018

Respectfully submitted,

**s/Ryan L. Erdreich**
Ryan L. Erdreich, Esq. (Florida Bar No.: 65712)
rerdreich@pmlegalfirm.com
Anthony M. Pisciotti, Esq. (pro hac vice)
apisciotti@pmlegalfirm.com
Danny C. Lallis, Esq. (pro hac vice)
dlallis@pmlegalfirm.com
Jeffrey M. Malsch
jmalsch@pmlegalfirm.com
PISCIOTTI MALSCH
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
Telephone: (973) 245-8100
Facsimile: (973) 245-8101

## CERTIFICATE OF SERVICE

I hereby certify that, on June 27, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system and a copy of the foregoing was served by the CM/ECF system upon all counsel and parties of record on the Service List below.

s/Ryan L. Erdreich
Ryan L. Erdreich, Esq. (Florida Bar No.: 65712)
rerdreich@pmlegalfirm.com

## SERVICE LIST

Angelo Martino, Jr., Esq.
amjrpamail@aol.com
amjrpal@hotmail.com
ANGELO MARTINO, JR., P.A.
645 S.E. 5th Terrace
Ft. Lauderdale, Florida 33301
Telephone: (954) 765-0537
Facsimile: (954) 765-0545
*Attorneys for Plaintiffs*

Steve W. Berman, Esq. (pro hac vice)
steve@hbsslaw.com
Jerrod C. Patterson (pro hac vice)
jerrodp@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*Attorneys for Plaintiffs*