UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16-cv-21008-CIV-MORENO/LOUIS

JEFFREY MELTON, EZEKIEL MORRIS, TOMMY JOHNSON, JUAN VALDES, and MANVILLE SMITH, Individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

CENTURY INTERNATIONAL ARMS, CORP.; CENTURY ARMS, INC.; CENTURY ARMS OF VERMONT, INC.; and CENTURY INTERNATIONAL ARMS OF VERMONT, INC.,

    Defendants.

CLASS ACTION

## DEFENDANTS' RULE 72 APPEAL FROM THE MAGISTRATE JUDGE'S DECISION DENYING THE MOTION FOR A PROTECTIVE ORDER TO PROHIBIT THE DEPOSITION OF DEFENDANTS' CHIEF EXECUTIVE OFFICER MICHAEL SUCHER AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendants Century International Arms Corp.; Century Arms, Inc.; Century Arms of Vermont, Inc.; and Century International Arms of Vermont, Inc. (collectively, "Century" or "Defendants"), pursuant to Rule 72 of the Federal Rules of Civil Procedure ("Rules") and Magistrate Judge local Rule 4(a), respectfully appeal from Magistrate Judge Louis's Paperless Minute Order dated July 20, 2018, which denied the Motion for a Protective Order to Prohibit the Deposition of Defendants' Chief Executive Officer Michael Sucher (Dkt. No. 138), and state as follows:

**PRELIMINARY STATEMENT**

Defendants respectfully contend that Magistrate Judge Louis's ruling on a motion for a protective order to prohibit the apex deposition of the Chief Executive Officer ("CEO") of Century

1

was contrary to law. Specifically, Defendants contend that the Court erred in finding that (1) Century was not a large enough company for the "apex doctrine" to apply and (2) Defendants had to initially prove that the deposition of a CEO was being sought for purposes of harassment before the Court would address the requirements of the apex doctrine. Case law establishes that the burden is on the party seeking an apex deposition to present sufficient evidence establishing the two interrelated prongs of the apex doctrine: the deponent possesses unique, first-hand knowledge pertinent to the case and other less intrusive means of discovery have been exhausted. Thus, a party seeking the deposition of a company executive (such as the CEO) must establish a sufficient foundation for taking the deposition. Defendants respectfully contend that Plaintiffs failed to meet this burden and that the motion for protective order should have been granted.

## PERTINENT FACTS AND PROCEDURAL HISTORY

A. **BACKGROUND**

Defendants import and manufacture firearms. Relevant to this lawsuit, Defendants purchase firearms and firearm parts from foreign locations (manufacturers, governments, etc.) and import the firearms in compliance with governmental regulations. Some firearms can be imported and re-sold; other firearms must be disassembled and then re-manufactured with some new parts in conformity with the law. Plaintiffs' proposed class action contends that AK-style firearms imported and sold by Century are defective because the safety lever can rise above the receiver dust cover. Defendants dispute this claim because there is no defect and the firearms have adequate safety devices.

B. **RULE 30(B)(6) DEPOSITIONS**

In response to a Rule 30(b)(6) deposition notice, on January 11, 2018, Defendants produced Philip Burnor, Century's Surplus Parts Manager, and Andrew Chamberlin, the Quality Manager. (Dkt. No. 87-4, Burnor Dep. at 4:2-25, 19:20-23, 177:2-7; Dkt. No. 87-5, Chamberlin Dep. at 4:2-

25, 49:17-50:9, 95:4-8.)   Mr. Burnor and Mr. Chamberlin provided deposition testimony responsive to the topics listed in the 30(b)(6) notice.[1] The witnesses were also questioned about the alleged defect and what Century did in response to it. (See, e.g., Dkt. No. 87-4, Burnor Dep. at 75:8-16.)  During Mr. Burnor's deposition, the only mention of Michael Sucher was when the witness was asked about Mr. Sucher's ownership interest of the Century companies. (Id. at 151:17 – 152:16, 154:2-7, 155:15-21, 158:5-8.)

C.   **THE REQUESTED DEPOSITION OF CENTURY CEO MICHAEL SUCHER**

Century employs approximately 125 persons in the States of Florida and Vermont. (Dkt. No. 135-2, Burnor Dep. at 153:2-3.)  The Sucher family are the corporate shareholders, and Michael Sucher is the CEO. (Dkt. No. 87-4, Burnor Dep. at 151:17 152:16.)  On June 7, 2018, Plaintiffs' counsel requested the deposition of Michael Sucher. (Dkt. No. 130-1, Email 6/7/18.) In a letter dated June 19, 2018, Defendants formally objected to the request, explaining that there is no basis to conduct the deposition of Century's CEO. (Dkt. No. 130-2, Erdreich Ltr. 6/19.18 at p. 2.)  Specifically, Defendants argued that Plaintiffs failed to demonstrate that the CEO had "unique, non-repetitive, firsthand knowledge of the facts at issue" or that "other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." (Ibid.)

> In response to Defendants' meet-and-confer effort, Plaintiffs indicated:
>
> We wish to take the deposition of Michael Sucher to determine what he knew of the defect in the class weapons, and what he did, if anything, about it. In addition, we wish to explore jurisdictional issues with him, such as where Century conducts its business and where the decisions were made regarding the alleged class defect.

---

[1] The topics included, among other things, when Century first became aware of the alleged "defect"; Century's response to the alleged defect; how the class weapons are manufactured and assembled; and the business relationship between and among the Century defendants. (Dkt. No. 121-1, 2d Supp. 30(b)(6) Dep. Notice at Topics 1, 2, 4, 7, 17, 19, 26, 30.)

3

> Mr. Burnor testified that Mr. Sucher is not a passive owner but was the CEO and ran the company.

(Dkt. No. 130-3, Marino Ltr. 6/20/18.)  Plaintiffs then noticed the deposition.  (Dkt. No. 130-4, Dep. Notice.)

### D.   DEFENDANTS FILED A MOTION FOR PROTECTIVE ORDER.

Defendants filed a motion for protective order, arguing that Plaintiffs failed to meet the requirements for seeking the apex deposition of Mr. Sucher.  (Dkt. No. 130.)  Citing the relevant standards, Defendants argued that in order to take the deposition of Century's CEO, Plaintiffs were obligated to establish that (1) Mr. Sucher has unique, non-repetitive, firsthand knowledge of the facts at issue and (2) other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success.  (Dkt. No. 130, Def. Mot. at p. 6-8.)  Defendants also argued that Plaintiffs failed to pursue any other discovery options prior to seeking the deposition of Century's CEO.  (Id. at p. 7-8.)  In this regard, Defendants noted that conducting a 30(b)(6) deposition, and doing nothing else, is insufficient to satisfy the second prong the apex deposition analysis.  Therefore, Defendants concluded that Plaintiffs should not be permitted to take Mr. Sucher's deposition.  (Ibid.)

In opposition, Plaintiffs argued that they met the applicable standards for seeking an apex deposition.  (See Dkt. No. 134 at p. 6-9.)  Plaintiffs contended that as CEO, Mr. Sucher "almost certainly has first-hand knowledge of the alleged defects in this case" and that "Mr. Sucher most likely could explain" why certain warnings were included in manuals.  (Id. at p. 6.)  Plaintiffs then generally argued that they "satisfied the exhaustion prong" of the apex analysis because they had conducted a 30(b)(6) deposition.  (Id. at p. 8.)  Finally, Plaintiffs argued that the cases relied upon by Defendants were distinguishable because those cases involved companies that were bigger than Century.  (Id. at p. 4-5.)

In reply, Defendants argued that speculative statements from counsel (claiming that Mr. Sucher "most likely" and "almost certainly" has first-hand knowledge) were insufficient to satisfy the first prong of the standard. (Dkt. No. 137, Def. Reply at p. 4.) Additionally, Defendants contended that a party seeking an apex deposition must first create a foundation through less intrusive discovery and asking specific questions to establish the executive's unique and personal knowledge. (Id. at p. 5-6.)

### E.   HEARING ON DEFENDANTS' MOTION FOR A PROTECTIVE ORDER.

On July 20, 2018, the parties appeared before Magistrate Judge Louis for a hearing on the pending motion. At the hearing, Magistrate Judge Louis asserted that the Court did not need to address the apex doctrine because "[t]here's a step before" reaching this analysis. (Ex. A, Tr. 7/20/18 at 3:22-25.)

First, Magistrate Judge Louis appeared to conclude that being the CEO of a company does not implicate the apex doctrine unless the company is a large company:

> But just the fact that he is the CEO of a company does not afford him Apex status that has been recognized in case law as preventing the deposition of the highest-ranking corporate officer because, otherwise, they're subject to harassment simply by virtue of their position in the company. So, the cases that you're relying on are where it's the CEO of IBM or Ford.

(Id. at 4:11-18; see also id. at 8:9-13 ("[I]f I start a company, and I'm a party of one, and I call myself the CEO, you can take my deposition without less intrusive means being first satisfied."); 14:14-19 ("This is a small company, as far as I can tell, from – just what I've been able to understand from the deposition excerpts that were provided in connection with this motion . . . ."). Magistrate Judge Louis stated, "based on what I know of Century Arms, I would not automatically confer apex status on Mr. Sucher such that he should be alleviated of [a] deposition automatically

5

then shifting the burden to the plaintiff to demonstrate a particularized need to depose him." (Id. at 14:2-24.)

Second, Magistrate Judge Louis concluded that before a Court could consider the apex doctrine a defendant was first obligated to demonstrate that Plaintiffs were seeking the deposition of the CEO "for the purpose of harassment." (Id. at 6:1-5 ("Under Rule 26, in seeking a protective order, the first step in meeting the burden of showing that the deposition is for the purpose of harassment."); 6:25 – 7:2 ("You have the burden on a Rule 26 motion to demonstrate that this deposition is for the purpose of harassment."); 8:14-17 (noting that Defendants have the burden of demonstrating that the deposition is for the purposes of harassment).) The Magistrate Judge also held that Defendants had the obligation to demonstrate that the CEO did not possess first-hand knowledge. (Id. at 7:25 – 8:3 (explaining that there "is an absence of evidence from defense that, in fact, [Mr. Sucher] is not involved in the day-to-day . . . [a]nd, in fact, does not have information about the facts that are germane to this case."); see also 8:17-25, 13:5-9.)

Ultimately, Magistrate Judge Louis denied the motion but restricted the deposition to four hours and at a location in close proximity to Mr. Sucher's current residence. (Id. at 15:1-22.) A Paperless Minute Order was entered on July 20, 2018. (Dkt. No. 138.)

## STANDARD

Any party may appeal from a Magistrate Judge's order determining a discovery motion or other pretrial matter by filing written objections "which shall specifically set forth the order, or part thereof, appealed from, a concise statement of the alleged error in the Magistrate Judge's ruling, and statutory rule, or case authority, in support of the moving party's position." Local Magistrate Rule 4(1). A District Court "shall set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." Ibid.; see also Fed. R. Civ. P. 72(a).

## ARGUMENT

Defendants respectfully object to the following aspects of Magistrate Judge Louis's Order:

(1)   That the apex doctrine was not applicable because Century was not a large enough company.

(2)   That the apex doctrine was not applicable because Defendants had the burden of demonstrating that the deposition of a CEO was being sought for purposes of harassment.

(3)   That even if the apex doctrine was applicable, Defendants had the burden of demonstrating that the CEO did not possess any first-hand knowledge.

(4)   Failing to fully address both prongs of the apex doctrine.

Defendant respectfully contends that, for the following reasons, these rulings are contrary to the applicable law.

### I.   APPLICATION OF THE APEX DOCTRINE IS NOT CONTINGENT UPON THE SIZE OF THE COMPANY.[2]

In opposing Defendant's motion for protective order, Plaintiffs did not submit any case law or other authority suggesting that the size of a company determines whether the apex doctrine applies. Nonetheless, the Magistrate Judge concluded that the apex doctrine was not applicable here because Century is "a small company" and cannot be equated with large companies, such as IBM or Ford. (Ex. A, Tr. 7/20/18 at 4:11-18, 8:9-13, 14:14-19.) Defendants respectfully submit that this assessment is contrary to the established law. As the Southern District of Florida has recognized, there is not a threshold size for companies that may seek "apex" protection for its senior management. Sun Capital Partners, Inc. v. Twin City Fire Ins. Co., 310 F.R.D. 523, 528 (S.D. Fla. 2015).

---

[2] It is also worth noting that Plaintiffs did not expressly challenge the application of the apex doctrine in this instance. Rather, it was argued that they satisfied the standards for seeking such a deposition. (See Dkt. No. 134.)

7

In Sun Capital, the party seeking a deposition of the executives of a 121-person company[3] expressly argued that the apex doctrine was not applicable because the company "is not a large company such as Google or General Motors" and "was a small enough company" where its principals would assuredly have information about the underlying dispute. Id. at 527. In rejecting this contention, the Southern District noted that there was no legal support having a size requirement to implicate the apex doctrine. Id. at 528; see also Opperman v. Path, Inc., 2015 U.S. Dist. LEXIS 137900, at *5 (N.D. Cal. Oct. 8, 2015) (addressing application of the apex doctrine to a "small company of only 41 employees").

In this case, Mr. Sucher is the CEO of a fifty-five-year-old company, with 125 employees in multiple states, that imports, manufactures, and sells literally thousands of varieties of rifles, shotguns, pistols, ammunition, magazines, triggers, muzzle devices, optics mounts, armorer's kits, parts, and holsters. See Century Arms, www.centuryarms.com (last visited July 31, 2018). There is no legal or equitable reason the apex doctrine should not be applicable to a CEO of such a company. Even if the size of a company were a relevant factor in deciding whether to apply the apex doctrine, Century meets this requirement as the apex doctrine should not be reserved solely for the Apples and Googles of the world. Further, this is not a situation – like the hypothetical posed by the Magistrate Judge – where the owner of a one-person company seeks to rely on the apex doctrine. (Ex. A, Tr. at 8:9-13 ("[I]f I start a company, and I'm a party of one, and I call myself the CEO, you can take my deposition without less intrusive means being first satisfied.").) Defendants submit that the apex doctrine should rightfully be applied in this instance.

---

[3] (See Ex. B, Reply Brief in Sun Capital Partners, Inc. v. Twin City Fire Ins. Co., Case No. 12-81397-CIV (S.D. Fla. Sept. 11, 2015), at p. 7 (noting that the company had 121 employees).)

## II. AS THE PARTY SEEKING THE DEPOSITION, THE BURDEN WAS ON PLAINTIFFS TO ESTABLISH THE REQUISITE PRONGS OF THE APEX DOCTRINE.

Magistrate Judge Louis also ruled that (1) the apex doctrine could not be applied unless the Defendants demonstrated that the deposition of Mr. Sucher was being sought for purposes of harassment and (2) even if the apex doctrine was applicable, Defendants had the burden of demonstrating that Mr. Sucher did not possess any first-hand, relevant knowledge. (See Ex. A, Tr. at 6:1-5, 6:25 – 7:2, 7:25 – 8:3, 8:17-25, 13:5-9.) Defendants respectfully contend that these rulings do not comport with the relevant case law.

When the apex doctrine applies, the burden is shifted to the party seeking to conduct such a deposition to establish "the required criteria before being permitted to take a deposition." Tillman v. Advanced Pub. Safety, Inc., 2017 U.S. Dist. LEXIS 26549, at *11 n. 1 (S.D. Fla. Feb. 16, 2017); see also Degenhart v. Arthur State Bank, 2011 U.S. Dist. LEXIS 92295, at *6 (S.D. Ga. Aug. 8, 2011) ("Where, as here, an apex deposition is challenged, the burden is placed upon the deposing party . . . ."). "Put simply, the apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." Performance Sales & Mktg., LLC v. Lowes Cos., 2012 U.S. Dist. LEXIS 131394, at *19-20 (W.D.N.C. Sept. 14, 2012). Thus, when a party seeks an apex deposition, that party has the burden of establishing that (1) the requested deponent has unique, non-repetitive, firsthand knowledge of the facts at issue and (2) other less intrusive means of discovery have been exhausted without success. See, e.g., Hickey v. N. Broward Hosp. Dist., 2014 U.S. Dist. LEXIS 180112, at *5-6 (S.D. Fla. Dec. 17, 2014).

9

During the hearing on the motion for protective order, Magistrate Judge Louis concluded that the burden was on Defendants to prove that the deposition was being sought for purposes of harassment and to prove that Mr. Sucher did not possess unique first-hand knowledge of the facts at issue. Defendants respectfully contend that, in conformity with the above-stated precedent, the burden was not on Defendants to prove that the deposition was noticed for purposes of harassment the burden was actually on Plaintiffs to meet the two-prong test for seeking an apex deposition. As the applicable case law demonstrates, there is a rebuttable presumption that an apex deposition is being sought for harassment or annoyance. Ibid.; cf. Brown v. Branch Banking & Trust Co., 2014 U.S. Dist. LEXIS 7721, at *3 (S.D. Fla. Jan. 22, 2014) (explaining that the reason for the apex doctrine is because executives are particularly vulnerable to numerous, repetitive, harassing, and abusive dispositions). Thus, Magistrate Judge Louis was incorrect to conclude that Defendants had the burden in this instance.

Moreover, it is worth noting that Magistrate Judge Louis's ruling would create a situation where the same standard is applied differently, depending on the type of motion at hand. Case law demonstrates that if a party files a motion to compel an apex deposition, the burden is on the party seeking the apex deposition. See Little League Baseball, Inc. v. Kaplan, 2009 U.S. Dist. LEXIS 124777, at *6 (S.D. Fla. Feb. 20, 2009). The Magistrate Judge's ruling in this case holds that if a motion for protective order on an apex deposition is filed, then the burden is on the party seeking to prevent the apex deposition. Based on this ruling, the same exact standard is treated differently based on the procedural mechanism by which the issue is brought to the Court's attention. This situation would not be equitable.[4] Indeed, this ruling would create a disincentive for a party to

---

[4] For example, if there is a dispute involving responses to written discovery demands, the burden is on the party opposing or resisting the discovery to justify its objections, regardless of which party filed the motion. See, e.g., Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 695 (S.D. Fla.

10

follow the Federal Rules of Civil Procedure and file a motion for protective order.  See Fed. R. Civ. P. 26(c); see also id. 37(d)(2) (noting that a failure of a party to attend a deposition will not be excused on the ground that it was objectionable unless the party files a motion for a protective order).

Given the applicable case law and the equitable considerations noted above, Defendants respectfully contend that it was contrary to law to hold that Defendants had the initial burden of establishing harassment and lack of first-hand knowledge before the Court would address the requirements under the apex doctrine.

### III.   THE EVIDENCE ESTABLISHES THAT PLAINTIFFS DID NOT SATISFY THEIR BURDEN OF ESTABLISHING THE PREREQUISITES FOR SEEKING THE DEPOSITION OF MR. SUCHER.

Magistrate Judge Louis never reached the issue as to whether Plaintiffs met the requirements for seeking an apex deposition.  See Hickey, 2014 U.S. Dist. LEXIS 180112 at *5-6 (explaining that the party seeking an apex deposition has the burden of establishing (1) the corporate official has unique, non-repetitive, firsthand knowledge of the facts at issue and (2) other less intrusive means of discovery have been exhausted without success).  If this issue had been addressed, however, the only conclusion to be drawn is that Plaintiffs failed to carry their burden in this regard.

First, Plaintiffs offered nothing but conjecture and speculation as to the "firsthand knowledge" possessed by Mr. Sucher.  Indeed, Plaintiffs' own arguments emphasized the speculative nature of their request because when pressed for evidence of Mr. Sucher's specific

---

2007) ("To sustain its discovery objections in response to the pending motions to compel, Defendant must, therefore, show that the requested discovery has no possible bearing on the claims and defenses in this case."); Rossbach v. Rundle, 128 F. Supp. 2d 1348, 1354-55 (S.D. Fla. 2000) (on competing motions to compel and for a protective order, noting that the burden is on the party objecting to the discovery).

11

knowledge, Plaintiffs argued that he "almost certainly has first-hand knowledge of the alleged defects in this case" and that he "most likely" could explain why certain warnings were included in certain manuals. (Dkt. No. 134, Plt. Opp. at p. 6.) Plaintiffs' contention regarding Mr. Sucher's purported firsthand knowledge of these issues was based solely on the following testimony from Century's 30(b)(6) witness:

> Q. From your experience and what you have observed, is Michael Sucher involved in running the business of Century Arms?
> A. He's involved, yes.

(Dkt. No. 135-2, Burnor Dep. at 158:5-8; see also Dkt. No. 134, Plt. Opp. at p. 6 n. 21 (citing this portion of Mr. Burnor's deposition).) Tellingly, nowhere does Mr. Burnor state that Mr. Sucher had "first-hand" knowledge of anything related to this lawsuit. Essentially, Plaintiffs sought to conduct the deposition of Mr. Sucher because of the statement that a CEO was generally "involved in running the business." If such a generalized and overly-broad statement were sufficient to satisfy the apex doctrine, then every CEO of every company would be deposed in every case. See In re Alcatel USA, Inc., 11 S.W.3d 173, 177 (Tex. 2000) ("Allowing apex depositions merely because a high-level corporate official possesses apex-level knowledge would eviscerate [the apex doctrine]. Such evidence is too general to arguably show the official's knowledge is unique or superior."). Defendants respectfully submit that Plaintiffs were required to submit actual facts or evidence to meet their burden of establishing the first prong of the test for seeking an apex deposition.

Second, Plaintiffs' arguments in support of meeting the second prong of the apex analysis (sufficient exhaustion of less intrusive means) were virtually non-existent. In their opposition brief, Plaintiffs offered, without citation to any evidence, the general statement that "[they] have already conducted substantial discovery, including multiple depositions, document requests, and

written discovery." (Dkt. No. 134 at p. 8.) Other than conducting two 30(b)(6) depositions, Plaintiffs did not seek or conduct the depositions of any other Century employee (whether it be a lower-level, mid-level, or upper-level employee). Instead, Plaintiffs waited five months after the 30(b)(6) depositions were completed and then noticed the deposition of the CEO of the company, contending that he "most likely" has relevant knowledge.[5] Defendants respectfully contend that to satisfy the second prong of the apex doctrine, a party must – *at the very least* – take some step between conducting a 30(b)(6) deposition and deposing the CEO of the company. This was not done.

The case law clearly demonstrates that a party should conduct intermediary depositions and/or otherwise engage in substantial written discovery to provide a foundation for seeking an apex deposition. See Reilly v. Chipotle Mexican Grill, Inc., 2016 U.S. Dist. LEXIS 193407, at *13-14 (S.D. Fla. Sept. 26, 2016) (noting that the party seeking an apex deposition established a foundation for the deposition by deposing lower-level employees who testified about the officer's "heavy[] involvement" in the consumer studies, the marketing decisions, and implementation of the marketing campaign specifically at issue). In other words, the apex doctrines two requirements are intertwined because a party seeking an apex deposition must first create an evidentiary foundation through less intrusive discovery (such as deposing junior or senior management and asking specific questions to such employees) to establish the CEO's unique and personal knowledge. Whether due to strategy or otherwise, Plaintiffs' counsel did not ask such questions

---

[5] Indeed, Plaintiffs never met-and-conferred with Defendants on this issue or about whether there were other, lower-level witnesses who could be made available. Instead, Plaintiffs sought and unilaterally noticed the deposition of the company's CEO.

during the 30(b)(6) depositions and never sought depositions of any other employees.[6] Thus, there is no evidence to demonstrate that an apex deposition is justified in this case.

## CONCLUSION

Based on the foregoing, Defendants respectfully submit that the Magistrate Judge's ruling was contrary to the established law and respectfully request that the Court sustain Defendants' objections to the Magistrate Judge's Order (Dkt. No. 138) and grant the motion for protective order in its entirety.

Dated: Florham Park, New Jersey
August 3, 2018

Respectfully submitted,

**s/Ryan L. Erdreich**
Ryan L. Erdreich, Esq. (Florida Bar No.: 65712)
rerdreich@pmlegalfirm.com
Anthony M. Pisciotti, Esq. (pro hac vice)
apisciotti@pmlegalfirm.com
Danny C. Lallis, Esq. (pro hac vice)
dlallis@pmlegalfirm.com
PISCIOTTI MALSCH
30 Columbia Turnpike, Suite 205
Florham Park, New Jersey 07932
Telephone: (973) 245-8100
Facsimile: (973) 245-8101

*Attorneys for Defendants*

---

[6] Plaintiffs contend that Mr. Sucher "most likely" has information about the alleged defective condition at issue and the contents of firearm manuals. Defendants produced two 30(b)(6) witnesses and Plaintiffs' counsel could have asked specific and pointed questions on these issues. For example, Plaintiffs could have asked whether Mr. Sucher had direct involvement in the procurement of surplus parts; the process by which the class firearms are imported, manufactured, or inspected; or the decisions regarding the manuals or warnings. Asking such questions could have provided the necessary foundation for seeking a deposition of the CEO of a company. However, no such questions were posed.

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 3, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system and a copy of the foregoing was served by the CM/ECF system upon all counsel and parties of record on the Service List below.

**s/Ryan L. Erdreich**
Ryan L. Erdreich, Esq. (Florida Bar No.: 65712)
rerdreich@pmlegalfirm.com

## **SERVICE LIST**

Angelo Martino, Jr., Esq.
amjrpamail@aol.com
amjrpal@hotmail.com
ANGELO MARTINO, JR., P.A.
645 S.E. 5th Terrace
Ft. Lauderdale, Florida 33301
Telephone:  (954) 765-0537
Facsimile:   (954) 765-0545
*Attorneys for Plaintiffs*

Steve W. Berman, Esq. (pro hac vice)
steve@hbsslaw.com
Jerrod C. Patterson (pro hac vice)
jerrodp@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile:   (206) 623-0594
*Attorneys for Plaintiffs*