UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-CV-21008-MORENO/LOUIS

JEFFREY MELTON, EZEKIEL MORRIS,
TOMMY JOHNSON, JUAN VALDES, and
MANVILLE SMITH,

    Plaintiffs,

v.

CENTURY ARMS, INC.; CENTURY
INTERNATIONAL ARMS CORP.;
CENTURY ARMS OF VERMONT, INC.; and
CENTURY INTERNATIONAL ARMS OF
VERMONT, INC.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE comes before the Court on Plaintiffs' Motions to Strike Testimony of Defendants' Experts Robert E. McCormick (ECF No. 107), Richard Vasquez (ECF No. 108), Derek Watkins (ECF No. 109), and Stephen Young (ECF No. 110). The motions were referred to the undersigned United States Magistrate Judge by the Honorable Federico A. Moreno, United States District Judge, for a Report and Recommendation (ECF No. 100). A hearing was held before the undersigned on November 7, 2018 on Plaintiffs' Motion for Class Certification and the parties' respective motions to strike each other's experts, who advanced opinions germane to the issue of class-wide treatment of Plaintiffs' claims. Having reviewed the parties' submissions, the record, the applicable case law, and considered the arguments advanced by counsel at the hearing, the undersigned recommends that Plaintiffs' motions be **DENIED**.[1]

---

[1] With respect to Plaintiffs' Motion to Strike Testimony of Richard Vasquez (ECF No. 108), the undersigned recommends that the motion be denied in part, as explained further below.

## I. BACKGROUND[2]

Plaintiffs filed the instant lawsuit against Century Arms, Inc., Century International Arms Corporation, Century Arms of Vermont, Inc., and Century International Arms of Vermont, Inc. (collectively, "Century" or "Defendants"), alleging that Century sold defective semi-automatic rifles that are capable of accidentally discharging when the safety selector is moved beyond the "safe" position. Plaintiffs allege that thirty-six different models of semi-automatic fire arms sold by Century (the "Class Weapons") are defective because they contain foreign-made, fully-automatic safety selectors intended for fully-automatic, not semi-automatic, firearms. According to Plaintiffs, Century has known about this defect since at least 2008, but has failed to remedy the defect, or warn the public of the same.

Plaintiffs' class action complaint included ten separate counts, of which two survived Defendant's motion to dismiss with respect to all Plaintiffs: Plaintiffs' FDUTPA claims, premised on Century's failure to disclose the defective safety lever; and Plaintiffs' unjust enrichment claim (ECF No. 20).[3] Plaintiffs' subsequently filed a Motion to Certify Class (ECF No. 81). Defendants' Response in Opposition attached expert declarations from four proposed experts: Mr. McCormick (ECF No. 87-17), Mr. Vasquez (ECF No. 87-3), Mr. Watkins (ECF Nos. 87-8, 96), and Mr. Young (ECF No. 87-16). Plaintiffs filed individual motions to strike each of these experts, on grounds that the testimony each offers is inadmissible.

## II. LEGAL STANDARD

A motion *in limine* seeks to exclude evidence prior to trial. A *Daubert* motion is a specific type of motion *in limine*, referring to the Supreme Court's decision in *Daubert v.*

---

[2] This order assumes knowledge of the operative facts of this case, which are extensively laid out in the undersigned's Report and Recommendation on Plaintiffs' Motion for Class Certification (ECF No. 194).

[3] In addition, Plaintiffs Melton and Morris have surviving claims arising under the laws of Arizona and Illinois, respectively, of fraudulent inducement (Count 6); negligent failure to disclose, failure to warn, concealment, and misrepresentation (Count 7); and fraudulent concealment and intentional failure to warn (Count 8); and Plaintiff Melton alone has claims for negligence (Count 2) and strict liability (Count 3).

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), where the Court held that the trial court must serve as a "gatekeeper" of expert witnesses to ensure that their testimony is both reliable and relevant. Federal Rule of Evidence 702, amended in 2000 in response to the *Daubert* decision, states that an expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d).

The Eleventh Circuit has required the trial court to conduct a "rigorous three-part inquiry" under Rule 702, considering whether: (1) the expert is qualified to testify competently regarding the matter she intends to address ("qualification"); (2) the methodology by which the expert reaches her conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* ("reliability"); and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue ("helpfulness"). *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The proponent of the expert bears the burden of showing, by a preponderance of the evidence, that each of these requirements is met. *Id.*

The Rule compels the Court to act as "gatekeepers to ensure that speculative, unreliable expert testimony does not reach the jury." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329 1335 (11th Cir. 2010) (citing *Daubert*, 509 U.S. at 597, n.13). However, in so doing, the Court makes no determinations on credibility or persuasiveness of the proffered evidence; "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

### III.   DISCUSSION

**A. Plaintiffs' Motion to Strike Testimony of Robert E. McCormick (ECF No. 107)**

Plaintiffs moved to exclude the opinion of Century's economics expert, Dr. Robert E. McCormick, on grounds that Dr. McCormick's testimony is not irrelevant to the issues in this case; and that Dr. McCormick is not qualified to testify regarding damages in this case, and employed questionable methodology (ECF No. 107).

In support of Century's Response to Plaintiffs' Motion for Class Certification, Century submitted an affidavit by Dr. McCormick to rebut the opinion of Plaintiffs' expert, who opined that damages may be proven with evidence common to the class (ECF No. 87-17). Dr. McCormick assumed the existence of a class-wide defect and opined that even if the alleged class defect existed uniformly among the class, there would be no identical proof that could be applied by common methodology across the class to demonstrate how the assumed flaw affected the market value of all rifles in the class.

Dr. McCormick opined that individualized analysis would be required to determine the specific loss suffered by each putative class member. Specifically, Dr. McCormick explained that purchasers of firearms buy these weapons for overwhelmingly different reasons. For example, a gun collector or enthusiast may have specifically purchased a Class Weapon for its original parts and thus may not have suffered any economic loss. Dr. McCormick also notes that there are other sources of potential class conflict, such as differences between purchasers who bought the Class Weapons before the alleged defect was publicized, and those who did so after the news was publicized (ECF No. 87-17 at 5). Dr. McCormick further opines that the class definition includes people who purchased used rifles, by whose purchase Century could not have been unjustly enriched (ECF No. 87-17 at 5). Dr. McCormick also analyzed the damages opinion

offered by Plaintiffs' expert, David Byron, and opined that Mr. Byron's opinion was unreliable and lacked adequate methodology (ECF No. 87-17 at 21).

### (a) Relevance of the Proposed Opinion

Plaintiffs contend that Dr. McCormick's opinion should be excluded as irrelevant under Federal Rule of Evidence 401. Plaintiffs argue that although Dr. McCormick is correct in opining that individuals purchase weapons for different reasons, such a proposition "is entirely irrelevant to whether the class weapons have a dangerous defect that decreases the value of the weapon" (ECF No. 107 at 4). Defendants respond that this is a minor part on which his opinion rests, and that Plaintiffs' relevance argument mischaracterizes his general opinion that class-wide damages would be impossible to prove for multiple reasons, including that purchasers assign individualized value to their personal weapons.

Dr. McCormick's proffered opinion, that damages incurred as a result of the alleged defect is not susceptible to class-wide proof, is relevant to the issue of class-wide damages in this case. Plaintiffs' challenge to Dr. McCormick's reliance on buyer's motivations for making their purchasing decisions to reach his conclusion regarding the difficulty of using a class-wide damages model is not a basis to strike his expert testimony. *See St. Cyr v. Flying J Inc.*, No. 3:06-CV-13-J-33TEM, 2008 WL 2608127, at *6 (M.D. Fla. June 29, 2008).

### (b) Qualifications

Plaintiffs contend that Dr. McCormick is not qualified to offer his opinion regarding individualized motivation to purchase a particular rifle because "he has no expertise in why people buy guns" (ECF No. 107 at 6). Plaintiffs contend that Dr. McCormick's experience in economics does not qualify him to offer his specific opinion in this case, regarding individuals' motives for firearm purchase. Plaintiffs' argument in this respect is based on too narrow a construct of Dr. McCormick's opinion and economics generally.

5

Dr. McCormick has a bachelor's degree, master's degree, and Ph.D. in economics (ECF No. 87-17 at 3). He is currently the Dean of the Business College at Clemson University. For twenty-five years he was employed as faculty in the Department of Economics at Clemson University, where he was named BB&T Scholar and Director of the BB&T Center for Economic Education at Clemson University. He has taught undergraduate and graduate level courses on economic theory, antitrust, financial and managerial economics, sports and economics, property rights and environmental economics, and entrepreneurial economics. In addition, he has served as a visiting professor at various national foreign universities, has earned numerous teaching awards at Clemson University, has served as a consultant for various federal agencies, including the Department of Agriculture and the Federal Trade Commission, and has been asked to testify before the U.S. Congress. Dr. McCormick has also published two books on political markets and managerial economics, eight monographs on topics ranging from environmental economics to property valuation and environmental economics, and more than forty articles in professional journals. In short, he is qualified to render his opinion on the economics of purchasing behaviors.

The qualifications standard for expert testimony is not stringent. "[A] witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). So long as the expert is "minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *1 (S.D. Fla. July 6, 2015) (citing *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012)).

The undersigned finds that Dr. McCormick is at least "minimally qualified" and sufficiently knowledgeable about the issues he opines about in his expert report. The fact that Dr.

McCormick does not have specific experience in the firearm industry does not preclude him from being able to testify as to the model of damages in this case. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). Plaintiffs' challenges to Dr. McCormick's qualifications go to the weight of his credibility and may make effective fodder for cross-examination, but his report demonstrates sufficient qualifications for the opinions he offers.

### (c) Methodology

Plaintiffs aver that Dr. McCormick's opinion is based on flawed methodological analysis. Specifically, Plaintiffs challenge Dr. McCormick's reliance on internet sources, a methodology Plaintiffs argue would not withstand peer scrutiny. Plaintiffs' attack in this regard arises from Dr. McCormick's explanation that the value of a personal asset, such as a firearm, is based on what someone in the market would pay for the asset, and his attendant examination of various categories of potential purchasers who would come to the market with varying intentions for the firearm. Dr. McCormick draws from publicly-available sources, including news station CNN and hobbyist magazines, for the examples he lists of potential purchasers of an AK-47.

Dr. McCormick's opinion, that damages here are not amenable to class-wide proof rests, in part, on his determination that individualized motivations exist for potential gun purchasers. Dr. McCormick explained in his affidavit that his opinions are supported by his substantial experience as an economist, and review of the case materials, including the complaint, Plaintiffs' proffered expert, David Byron's, opinion, the parties' discovery responses, Plaintiffs' and the parties' expert deposition testimonies, in addition to his internet research regarding individual preferences for firearm purchases. Dr. McCormick's internet research, used to provide substantiation for the analysis offered in his report, does not render his methodology inherently unreliable; as described in his affidavit, he has additionally relied on his own experience as an economist and other evidence of record to support his opinions. *See Alfa Corp. v. OAO Alfa*

7

*Bank*, 475 F. Supp. 2d 357, 363 (S.D.N.Y. 2007). Plaintiffs' challenges to Dr. McCormick's opinions are best addressed through cross-examination, not preclusion.

With respect to helpfulness, the Court has already determined that Dr. McCormick's opinion is relevant and would be helpful to assessing the appropriateness of employing a class-wide damages model. Dr. McCormick's experience in economics provide him with a basis to testify on matters "that are beyond the understanding of the average lay person." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *2 (S.D. Fla. July 6, 2015) (quoting *Edwards v. Shanley*, 580 Fed. Appx. 816, 823 (11th Cir. 2014)).

For the foregoing reasons, the undersigned recommends that Plaintiffs' Motion to Strike Testimony of Robert E. McCormick (ECF No. 107) be denied.

B. **Plaintiffs' Motion to Strike Testimony of Richard Vasquez (ECF No. 108)**

Plaintiffs move to exclude the opinion of Century's firearm expert, Richard Vasquez, on grounds that Mr. Vasquez employed unreliable methodology in arriving at his conclusions. Plaintiffs do not challenge Mr. Vasquez's qualifications, or the helpfulness of his opinion. Having reviewed the disclosed opinions and qualifications advanced therefor, the undersigned agrees that Defendants have satisfied their burden of showing that Mr. Vasquez is qualified to testify about the functionality and maintenance of an AK-47, and that his opinion would be helpful to a jury.

Mr. Vasquez has over forty years of experience in the firearm industry, including serving as the Floor Chief of the Weapons Training Battalion for the United States Marine Corps, working for fifteen years in the Bureau of Alcohol, Tobacco, Firearms, and Explosives, which required him to inspect and evaluate foreign firearms like AK-47s, and owning and operating a firearm consulting company that provides consulting services for manufacturers and private gun

collectors, regarding the identification and classification of firearms, the history of firearms, and issues related to importing and exporting firearms (ECF No. 87-3).

Plaintiffs challenge Mr. Vasquez's methodology underlying his opinions on the grounds that it is not based on objective evidence, but rather on "cherry-picked," self-serving information; specifically, Plaintiffs oppose admission of Mr. Vasquez's opinion that the Class Weapons have no defect, or that the defect is not dangerous, because he reaches that conclusion without the rigorous inquiry required (ECF No. 108 at 6).

Century advances Mr. Vasquez's expert opinion in support of its Opposition to Plaintiffs' Motion for Class Certification (ECF No. 87-3). Therein, Mr. Vasquez opines that: (1) dust covers are designed to prevent the safety selector from over-rotating past the "safe" position and should only be removed for cleaning the firearm; (2) many consumers value the Class Weapons for their original components, and, as such, to the extent this lawsuit decreases the availability of firearms with original parts, some consumers may be harmed by this lawsuit; and (3) the Class Weapons operate safely. To support his opinions, Mr. Vasquez relies on his experience in the firearm industry, his inspection of approximately 100 firearms at a Century facility, a review of all the depositions and document production in the case, and his own research and conversations with consumers (ECF No. 87-3).

Plaintiffs' Motion to Strike raises a number of criticisms of Mr. Vasquez's affidavit that amount to grounds for impeachment, but not exclusion. For example, Plaintiffs fault Mr. Vasquez for including photographs of guns that may not be Class Weapons in his general description of the functionality of dust covers. No opinion, however, is offered in conjunction with these photographs, which were illustrative of his description of the dust cover placement and purpose (ECF No. 117-1 at 110). Mr. Vasquez's opinions, as they relate to dust covers, pertain to the general functionality of the dust cover in an AK-47 rifle: that dust covers generally

9

serve various functions, including preventing the over-rotation of the safety selector. To the extent Plaintiffs' attack here is intended to discredit Mr. Vasquez's basis for explaining the utility of a dust cover, his affidavit avers that he has handled thousands of AK-style firearms and has provided training to "thousands of personnel" regarding the use of these firearms (ECF No. 87 at 8-9). His opinions regarding the utility of the dust cover in an AK-47 are based on these experiences, for which Mr. Vasquez has proffered adequate foundation.

Plaintiffs also argue that Mr. Vasquez should be precluded from offering his opinion that the veterans and firearm collectors often seek weapons that have original parts and thus may disagree with, or be harmed by, this lawsuit (ECF No. 108 at 14). Mr. Vasquez further opines that given his experience with veterans and gun collectors, he believes some consumers will be harmed by this lawsuit, if supply for original firearm parts decreases. Plaintiffs fault Mr. Vasquez for not performing "any kind of analysis on veteran purchasing patterns, or statistical analysis" and for "cherry-picking" data that suits his opinion (ECF No. 108 at 5).

An expert witness is not required to perform a statistical analysis in order to provide admissible testimony. If a "witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). In this case, Mr. Vasquez, a veteran himself, explained that because AK-style rifles have been used in the military since the Vietnam war, in his experience, many veterans purchase AK-style rifles out of "nostalgia, [or] to study the firearm, or to collect" the same (ECF No. 87-3 at 14). Indeed, Mr. Vasquez noted that Century has made commemorative firearms, for veterans and historical societies that particularly value AK-style firearms. Because of the historical significance of these weapons, Mr. Vasquez explained that there are museums, private groups, and even societies, like

the Kalashnikov Collectors Association, which Mr. Vasquez belongs to, which are "dedicated to the AK-47" (ECF No. 87-3 at 14-15). These groups value AK-style firearms "for their historical significance" and as such "collectors seek out, and value, authentic components" (ECF No. 87-3 at 15). In addition, Mr. Vasquez noted that Plaintiff Morris himself had acknowledged in his deposition that gun collectors often want as many original parts as possible in their firearms (ECF No. 87-3 at 15-16). To the extent this lawsuit decreases the availability of original firearm parts, Mr. Vasquez opined, certain consumers, like veterans and firearm collectors, who purchase AK-style firearms for their authentic parts, will necessarily be adversely impacted.

      The undersigned finds that Mr. Vasquez's opinion regarding the value of "original" parts in foreign firearms is primarily based on his personal experience in the firearm industry, and that he has sufficiently explained the foundation for the same. As such, Plaintiffs' challenges regarding the conclusions he draws therefrom, or the sources on which Mr. Vasquez relies, are adequately addressed through cross-examination. The undersigned notes that Plaintiffs' contention that Mr. Vasquez "cherry-picked" evidence with respect to user comments from an online forum appear to be misplaced, as Mr. Vasquez explained at his deposition that his opinion as based on his "experience and…knowledge on the AK firearms," and not any online comments (ECF No. 117-1 at 40).

      Plaintiffs also contend that Mr. Vasquez should not be able to opine that the Class Weapons operate safely because his opinion is not supported by any record evidence. Mr. Vasquez opines that the Class Weapons operate safely based on the lack of reported injuries or deaths from unintentional discharged, which is evinced by Century's customer service records, and from his inspection of approximately 100 firearms. However, the lack of reporting does not, on its own, prove an absence of a defect in the Class Weapons. Similarly problematic is the ambiguity surrounding Mr. Vazquez's inspection of 100 firearms. Mr. Vasquez does not specify

the nature of his inspection, whether the firearms he viewed were Class Weapons, how he conducted his inspection, and on what findings his conclusion was based on. Further, Mr. Vasquez's opinion states the inspected weapons were made from "a variety of manufacturers and included different models," suggesting the firearms inspected may not have even been made by Century. Plaintiffs highlight that Mr. Vasquez conceded at his deposition that the results of his opinion could not be replicated, and the Court agrees that with respect to Mr. Vasquez's opinion regarding the safety of the Class Weapons, there is no discernable method that could be replicated, or vigorously cross-examined. A trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained; or where a large analytical leap must be made between the facts and the opinion. *Edwards v. Shanley*, 580 Fed. Appx. 816, 823 (11th Cir. 2014). In this regard, Mr. Vasquez's opinion is imprecise and requires too great an analytical leap between his inspection and his opinion that all the Class Weapons operate safely.

For the foregoing reasons, the undersigned recommends granting in part and denying in part Plaintiff's Motion to Strike Testimony of Richard Vasquez (ECF No. 108). Mr. Vasquez's opinion should be admitted, except for his testimony that "the Class Weapons operate safely." ECF No. 87-3 at ¶¶ 28, 45 ("these guns can be used safely").

### C. Plaintiffs' Motion to Strike Testimony of Derek Watkins (ECF No. 109)

Plaintiffs move to exclude the opinion of Century's expert, Derek Watkins, on grounds that Mr. Watkins conducted flawed inspections of Century's weapons, resulting in unsound opinions (ECF No. 109). Though Mr. Watkins offers a variety of opinions in his two expert reports (ECF Nos. 87-8, 96), including his opinions regarding the utility of dust covers and variance in parts among the Class Weapons, Plaintiffs' motion focuses its challenge on the propriety of the two inspections of firearms conducted by Mr. Watkins.

Plaintiffs do not challenge Mr. Watkins's qualifications. Having reviewed the disclosed opinions and qualifications advanced therefor, the undersigned agrees that Defendants have satisfied their burden of showing that Mr. Watkins is qualified to competently testify regarding the matters in his opinion. Mr. Watkins is a mechanical engineer who worked for Remington Arms Corporation managing and conducting product liability investigations and testing, designing firearms controls and linkages for sporting firearms, and serving as the lead engineer for the M710 (ECF No. 87-8 at 23-24). Since 2014, Mr. Watkins has been the president and chief engineer at Nth Level, LLC, an engineering consulting firm specializing in the evaluation of firearms and ammunition design and manufacturing. In addition, Mr. Watkins has been qualified as an expert in firearms in four trials (ECF No. 87-8 at 26).

Plaintiffs challenge Mr. Watkins's methodology in reaching his opinions, primarily on grounds that his inspection included weapons that were either not part of the class definition, or were manufactured by competitors. In addition, Plaintiffs argue that Mr. Watkins erroneously relied on a Century employee to provide him with the firearms to inspect without conducting an independent verification of whether the firearms he inspected were part of the class definition.

Mr. Watkins's declarations explain[4] that he visited a Century facility on two separate occasions and inspected approximately 100 firearms provided to him by Century. As Mr. Watkins's declarations explain, as part of his inspection, he tried to over rotate the safety selector above the dust cover for each firearm, but was unable to do so for any of them (ECF No. 87-8 at 13, ECF No. 96). He then removed the dust covers of the firearms and again sought to over rotate the safety selector, which could be accomplished for 31 firearms in his initial inspection, and 34 firearms in his second inspection (ECF No. 87-8 at 13, ECF No. 96 at 1). Mr. Watkins recorded the findings of both of his inspections in charts that specified the serial numbers and

---

[4] Mr. Watkins also testified at the hearing on November 7, 2018.

model numbers of the firearms he reviewed and contained detailed descriptions of the rifles (ECF No. 87 at 21-22; ECF No. 96 at 3-5). From these inspections, Mr. Watkins concluded that none of the inspected firearms were capable of accidentally discharging when fully assembled (ECF No. 96 at 1). In addition, Mr. Watkins inspected the named Plaintiffs' weapons, and reviewed both parties' discovery responses, Plaintiffs' deposition testimony and the reports of Plaintiffs' expert, David Byron, to substantiate his conclusions.

The Eleventh Circuit has held that "in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (internal quotations and citations omitted). In this case, the undersigned finds that Plaintiffs' critiques of Mr. Watkins's inspection go to weight, rather than admissibility. Mr. Watkins's reports clearly explain how he came to inspect the weapons at issue, which specific weapons he reviewed, how he reviewed them, and what the results of his inspections were. His method of inspection and his results are thus discernable and can be subjected to effective cross-examination. Indeed, Mr. Watkins's second inspection was a result of Plaintiffs' critique of Mr. Watkins's initial report, in which Plaintiffs identified duplicative or mistaken entries in Mr. Watkins's initial report. As such, this is not a case where the jury is likely to be swayed by facially authoritative, but substantively unsound expert evidence that cannot be tested. Criticism regarding the sample chosen for inspection go to weight, not admissibility. *See Lee-Bolton v. Koppers Inc.*, 319 F.R.D. 346, 379 (N.D. Fla. 2017) (holding that plaintiffs' argument that an expert considered too few samples goes to weight, not admissibility).

Similarly, Plaintiffs' critique that Mr. Watkins should not have relied on Century to supply him with the firearms for his inspection without independently verifying whether they were part of the class definition, goes to weight, not admissibility. It is for the factfinder to

determine whether less credit should be given to Mr. Watkins's inspections because of this issue, but it is not a defect warranting exclusion. Because Mr. Watkins has articulated the methodology on which his opinions are based, Plaintiffs' challenges are best addressed through cross-examination, not preclusion. *See Daubert*, 509 U.S. at 596. ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

The undersigned also finds that Mr. Watkins's experience and expertise in the firearm industry provide him with a basis to testify about matters "that are beyond the understanding of the average lay person." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *2 (S.D. Fla. July 6, 2015) (quoting *Edwards v. Shanley*, 580 Fed. Appx. 816, 823 (11th Cir. 2014)). Accordingly, his testimony would also be helpful to a jury.

For the foregoing reasons, the undersigned recommends that Plaintiffs' Motion to Strike Testimony of Derek Watkins (ECF No. 109) be denied.

### D. Plaintiffs' Motion to Strike Testimony of Stephen Young (ECF No. 110)

Plaintiffs move to exclude the opinion of Century's human factor and warning expert, Stephen Young, on grounds that Dr. Young lacks the qualifications necessary to offer his opinion in this case, and is offering irrelevant and unhelpful testimony.

Dr. Young submitted an affidavit in support of Century's Opposition to Plaintiffs' Motion for Class Certification and offers therein his opinion that causation is not amenable to class-wide proof because it is not appropriate to assume a uniform response to a warning of a defect (ECF No. 87-16). To render his opinion, Dr. Young conducted his own research, reviewed the parties' discovery, including the instruction manuals produced by Century, and read all the deposition testimonies available (ECF No. 87-16 at 28-29). In his report, Dr. Young opines on a

variety of issues, including that: (a) assuming the Class Weapons are not defective, there would be no need to warn consumers about the allege defect; (b) throughout the years Century has provided adequate, but varying warnings and instructions to consumers; and (c) individuals generally react and respond to warnings in different manners, such that even if Century had issued revised warnings, there is no reason to conclude consumers would have responded differently, absent individualized analysis. Defendants' Opposition to Plaintiffs' Motion for Class Certification cites Dr. Young's declaration only once, in a footnote, to support their argument that consumers who did not read particular versions of Century's manual could not have been misled by the omissions allegedly therein (ECF No. 87 at 16, n.16).

**(a) Qualifications**

Plaintiffs contend that Dr. Young is not qualified to issue his opinions in this case because he lacks experience with firearms and "has not been involved in any litigation of any sort involving firearms in the last several years" (ECF No. 126 at 1), and because Dr. Young has worked as an expert for the defense "in about 95% of his cases" (ECF No. 110 at 4).

Dr. Young has a bachelor's degree in psychology and master's degree and Ph.D. in engineering psychology (ECF No. 87-16 at 20). He has served as a university guest lecturer on warnings and human factors since 1997, has published over fifty articles, including journal articles and contributions to books, regarding warnings and human factors, and has assisted manufacturers and government entities in designing and evaluating warnings and instructions (ECF No. 87-16 at 2, 21-22). For the last twenty years he has been senior ergonomist consultant at Applied Safety & Ergonomics, Inc. In addition, Dr. Young has been qualified as an expert witness on warnings and human factors in the past, and has provided testimony regarding warnings related to firearms in at least one other litigation. *See Latham v. Edelbrook Corp.*, 2009 U.S. Dist. LEXIS 89282, at *5 (S.D. Ill. Sept. 26, 2009) (allowing Dr. Young to testify about the

fact that instruction manuals are not necessary because consumers tend to ignore such warnings); *see also Green v. Blitz U.S.A. Inc.*, 2008 U.S. Dist. LEXIS 123538, at *2 (E.D. Tex. Aug. 28, 2008); ECF No. 118-1 at 10.

The qualifications standard for expert testimony is not stringent. "[A] witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). So long as the expert is "minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *1 (S.D. Fla. July 6, 2015) (citing *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012)).

The undersigned finds that Dr. Young is at least "minimally qualified" and sufficiently knowledgeable about the issues he opines about in his declaration, specifically, product warnings and instructions. Dr. Young's opinion is primarily centered on how individuals receive and interpret warnings, and whether such practices can be uniformly applied to groups. Dr. Young's experience involving human factors and warnings is extensive, and include having a Ph.D. in engineering psychology, authoring over fifty articles and publications involving warnings and human factors, serving as a warnings expert in state and federal cases, and testifying as an expert in past litigation involving firearms.

Dr. Young's lack of experience regarding firearms does not render him unqualified to render the opinions offered here. Dr. Young need not be an expert on firearms to be qualified to testify about warnings and their impact, or lack thereof, on the putative class. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (holding that economic expert was sufficiently qualified to render an opinion regarding lost value damages where the expert had no real estate experience).

17

Dr. Young has extensive experience on instruction manuals and warnings, and the scope of his opinion regarding the warnings in this case fall well within his realm of expertise. Moreover, the Court notes that Dr. Young has been retained "to address warning-related issues in litigations involving firearms and accessories" in the past (ECF No. 118-1 at 10). With respect to Plaintiffs' challenge that Dr. Young has testified as a defense expert in 95% of his cases, the undersigned finds that such criticism goes to the weight of his credibility, not to admissibility.

Embedded in Plaintiffs' challenge of Dr. Young's admissibility is criticism regarding Dr. Young's reliance on studies that predate the year 2000. To the extent Plaintiffs sought to challenge Dr. Young's methodology in this regard, such arguments go to the weight of the evidence, not to admissibility. Dr. Young's declaration states that his opinions are based on his disclosed experience in warnings and human factor analysis, a review of both the competent literature regarding these topics, and the pleadings, discovery, and depositions related to this lawsuit. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). In this case, Dr. Young's report outlines and explains the studies on which he draws upon for his conclusion that "there is no reasonable basis to conclude that individuals within a group or class would respond in uniform fashion to a warning" (ECF No. 87-16 at 11). His conclusions are based on both his experiences as an engineering psychologist and on the "body of literature on people's response to hazard communications" (ECF No. 87-16 at 11). Because Dr. Young's methodology is discernable and can be subjected to cross-examination, the Court finds that it meets the *Daubert* standard.

Plaintiffs also argue that Dr. Young's opinion is unhelpful and irrelevant to this litigation because Dr. Young improperly based his conclusion regarding the suitability of Century's warnings on the assumption that Century had only received "two or three complaints" about the alleged defect when, according to Plaintiffs, the number is likely much greater. In addition, Plaintiffs contend that Dr. Young improperly assumed that the Class Weapons did not have a defect in rendering his opinion that additional warnings would not be required. Plaintiffs argue that because of these assumptions Dr. Young's opinion does not "fit" with the facts of the case.

While Plaintiffs are correct that an expert's opinion will not fit within the facts of the case where a large analytical leap must be made between the facts and the opinion of the expert, Dr. Young has identified the evidence (and absence thereof) on which he rests his opinions. Dr. Young's opinion is based on Century's corporate representative, Philip Burnor's deposition testimony in which Mr. Burnor stated that he had received "two or three" complaints regarding the alleged defect in this case (ECF No. 87-4 at 116). Mr. Burnor's subsequent declaration stating that Century has received "under twenty" complaints relating to the alleged defect is not inconsistent with his deposition testimony, and does not undermine Dr. Young's conclusion (ECF No. 87-10). This is not a large analytical leap that would disqualify Dr. Young's opinion, but may be thoroughly examined in cross-examination. *See Goins v. Royal Caribbean Cruise, Ltd.*, No. 16-21368-CIV, 2017 WL 5749778, at *6 (S.D. Fla. May 17, 2017).

In addition, Plaintiffs contend that because there is no legal requirement that Plaintiffs demonstrate a "uniform" response to Century's warnings, Dr. Young's opinion regarding individuality in the reception of warnings is unhelpful and irrelevant to this case. While Plaintiffs are correct in arguing that FDUTPA does not require a showing of reliance, FDUTPA does require Plaintiffs to show uniformity in causation, meaning that Century's allegedly deceptive act uniformly caused the putative class members the harm alleged. Thus, the question of whether

19

or not consumers were uniformly harmed by Plaintiffs' allegedly deceptive practices, or whether determination of the same requires individualized inquiry, is relevant to Plaintiffs' FDUTPA claim. Accordingly, the Court finds that Dr. Young's report is both relevant and helpful because it "concerns matters that are beyond the understanding of the average lay person." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-CIV-80371, 2015 WL 11251759, at *2 (S.D. Fla. July 6, 2015) (quoting *Edwards v. Shanley*, 580 Fed. Appx. 816, 823 (11th Cir. 2014)).

For the foregoing reasons, the undersigned recommends that that Plaintiffs' Motion to Strike Testimony of Stephen L. Young (ECF No. 110) be denied.

## IV. CONCLUSION

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the Parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the Parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers, in Miami, Florida, this 6th day of December, 2018.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE